El Pueblo, Apelado, *v.* Benítez et al., Apelantes.

Apelación procedente de la Corte de Distrito de San Juan, Sección 2ª.

No. 422.—Resuelto en marzo 6, 1913.

Derecho Penal—Exposición Anterior por el Mismo Edicto (Former Jeopardy)—Muerte del Juez Sentenciador.—Cuando el juez que conoce de una cause fallece antes de dictar sentencia, los acusados pueden ser juzgados por el juez sucesor, sin que esto constituya haber estado expuesto anteriormente por el mismo delito. Los principios que rigen esta alegación en juicios por jurado son aplicables a casos juzgados por un juez sin jurado.

ID.—SUFICIENCIA DE LA DENUNCIA.—Aunque la denuncia no está redactada con precisión, como dice que los acusados jugaban "con dinero," estas palabras son suficientes para informarles de que se trata de un juego en el cual mediaba, dinero y que, por lo tanto, jugaban "por dinero".

ID.—ESTATUTO TOMADO DE OTRO ESTADO—PRESUNCIÓN.—Cuando se toma un estatuto de otro Estado, la presunción es que la legislatura al adoptarlo lo hizo con la interpretación que se le ha dado en las cortes del Estado de procedencia.

ID. — JUEGOS PROHIBIDOS — INTERPRETACIÓN DEL ESTATUTO —"NOSCITUR A SOCIIS."—La palabra "jugar" empleada en la primera parte del artículo 299 del Código Penal tal como se aprobó originariamente, equivalente al 330 del Código Penal de California, incluye a toda persona que da las cartas, dirige o sostiene la jugada, y excluye a las personas que juegan o apuestan en juegos prohibidos en el sentido en que estas palabras se usan en la segunda parte del mismo artículo. Estas exigen la misma interpretación, de acuerdo con el principio de *noscitur a sociis*.

ID.—JUEGOS PROHIBIDOS—INTERPRETACIÓN DEL ESTATUTO.—De la jurisprudencia, examinada, es evidente que el artículo 299 del Código Penal tal como se aprobó originariamente, tuvo por objeto suprimir todas las jugadas mencionadas en el mismo cuando hubiera una persona que dirigía, abría o administraba la jugada y esa misma persona o alguna otra recibía un beneficio o ganancia por el hecho de abrirla, administrarla o dirigirla.

ID.—JUEGOS PROHIBIDOS—ENMIENDA DEL ESTATUTO.—Como el artículo 299 de nuestro Código Penal fué enmendado en 1908 añadiéndole únicamente la palabra *poker* a la relación de juegos prohibidos sin alterar la naturaleza de dicho estatuto, el principio de *noscitur a sociis* es igualmente aplicable a dicho artículo enmendado.

ID.—"POKER."—Aunque el *poker* puede ser jugado sin banquero o persona que lo dirija, también puede jugarse con banquero que obtiene un beneficio o tanto por ciento, y en este caso cae dentro de los juegos prohibidos por dicho artículo enmendado.

ID.—INTERPRETACIÓN DE ESTATUTO—"NOSCITUR A SOCIIS."—Es regla de interpretación que cuando las palabras de una significación especial van seguidas de palabras genéricas que no tienen una significación específica y limitada, éstas deben de ser interpretadas en el sentido de hacer referencia a personas o cosas de la misma clase a que se refieren las palabras de significación particular, a menos que el contexto general claramente demuestre lo contrario.

ID.—JUEGOS PROHIBIDOS—INTERPRETACIÓN DEL ESTATUTO.—La intercalación de las palabras "o cualquier juego de azar" en el artículo 299 de nuestro Código Penal por la enmienda de marzo 10, 1910, no tienen otro objeto que el prohibir todo juego de naturaleza semejante a los juegos en dicho artículo enumerados, y en los que concurran las circunstancias de haber una persona que eche las cartas, dirija, abra, sostenga, o juegue en el sentido en que estas palabras se usan en la primera parte de dicho artículo. El principio *noscitur a sociis* es igualmente aplicable a esta enmienda.

ID.—JUEGOS PROHIBIDOS—ELEMENTOS DEL DELITO.—Para que uno pueda ser culpable del delito de jugar o apostar en un juego, es necesario que haya uno que lo dirija, sostenga, eche las cartas o juegue dicho juego prohibido dentro de la significación que estas palabras tienen en la ley.

Id.—Jugada de "Poker" en una Casa Particular.—El jugar *poker* en una casa particular no está prohibido en el estatuto, al menos que haya una persona que cobre barato o reciba un beneficio sosteniendo el juego o facilitando los medios para jugar.

Id.—Duda a Favor del Acusado.—Toda duda que se presente en la interpretación de un estatuto criminal debe ser resuelta a favor del acusado.

Id.—Estatutos Criminales—Interpretación.—Los estatutos criminales deben ser interpretados restrictivamente en sus partes contrarias al acusado y liberalmente en los que las favorece o exime del delito. A nadie se le puede condenar aplicándole el estatuto por deducción tácita.

Los hechos están expresados en la opinión.

Abogado del Pueblo: *Sr. Charles E. Foote, Fiscal.*

Abogado de los apelantes: *Sr. Eugenio Benítez Castaño.*

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal.

En este caso en el cual la acusación parece haber sido presentada de acuerdo con el artículo 299 del Código Penal, los apelantes presentan cuatro fundamentos por los cuales solicitan la revocación de la sentencia apelada, a saber:

I. Insuficiencia de la denuncia.

II. Inaplicabilidad del artículo 299 del Código Penal a un juego que tiene lugar en una casa particular.

III. Desestimación de la alegación de haber estado los acusados expuestos anteriormente por el mismo delito.

IV. Insuficiencia de la prueba.

Consideraremos en primer término la alegación de haber estado los acusados expuestos anteriormente por el mismo delito (*former jeopardy*). Esta alegación no ha estado bien fundada. Se basa la misma en el hecho de que habiéndose celebrado el juicio de esta causa originalmente en la corte de distrito ante el Juez Gill sin jurado y sometida al mismo toda la prueba, dicho juez falleció hacia mediados de junio de 1911 sin haber formulado conclusiones de hecho o dictado sentencia en dicho caso. Aunque es cierto que la alegación de haber estado el acusado anteriormente expuesto por el mismo delito puede en algunos casos promoverse por virtud de una alegación al disolverse el primer jurado y juramentarse el segundo, esto no ocurre así cuando el primer jurado, debido a algún hecho o accidente ajeno a la voluntad del Fiscal, se encuentra

imposibilitado de actuar como tal jurado como sucede cuando uno de los mismos fallece. Cuando así sucede, no hay posibilidad de que pueda emitirse un veredicto. La alegación de haber estado los acusados anteriormente expuestos por el mismo delito, queda sin efecto y debe entonces celebrarse un nuevo juicio. Aunque en este caso fué un juez el que conoció de los hechos, sin embargo, el principio es igualmente aplicable por lo que el segundo juez sentenciador no cometió error alguno al resolver la alegación de *jeopardy* en contra de los acusados. *Nugent* v. *State,* 24 Am. Dec., 746; *State* v. *McKee,* 21 Am. Dec., 499; *People* v. *Ross,* 85 Cal., 383.

Al discutirse la cuestión referente a la suficiencia de la denuncia, dos cuestiones se presentan a la consideración de la corte. La primera se refiere a que la denuncia es defectuosa puesto que en ella se imputó a los acusados el hecho de jugar *poker* con fichas y dinero, en vez de alegar que jugaban por dinero o con fichas que representaban dinero o valores. En el caso de *People* v. *Carroll,* 80 Cal., 153, que ha sido citado por los apelantes, solamente se resuelve que una acusación en la que se alegue que el juego se "efectuaba por dinero" (*conducted for money*) no es equivalente a expresar "que se jugó por dinero" (*played for money*), según exige el estatuto, puesto que dicho juego podría llevarse a cabo por pasatiempo, pagando alguien que no estuviera tomando parte en el mismo para que dicho juego se efectuara. Si bien es cierto que la denuncia ha sido presentada en forma algo defectuosa, sin embargo, es suficiente para que los acusados tuvieran conocimiento de que se cambiaba dinero en el juego, y, por tanto, que jugaban ellos por dinero.

La cuestión principal envuelta en este caso es si el artículo 299 del Código Penal, según ha sido enmendado por leyes posteriores, tuvo por objeto o fin el suprimir toda clase de juegos prohibidos por dinero o valor o su propósito fué impedir aquella clase de juegos en los que frecuentemente una o más personas recibían una ganancia o beneficio pecuniario, ya di-

recta o indirectamente, arriesgando o nó dinero por su parte
o con un tanto por ciento en su favor.

El jugar con dinero no constituía delito, según la ley común,
a menos que dicho juego pudiera llegar a constituir una in-
fracción o alteración de la paz o se convirtiera en un perjuicio
público (*nuisance*). Una casa conocida ordinariamente como
casa de juegos podía ser denunciada por ser un perjuicio pú-
blico. *Lord* v. *State,* 41 Am. Dec., 730. Posteriormente se
aprobaron otros estatutos en casi todo el país contra los
juegos públicos y casas públicas de juegos, y a veces contra
los jugadores de oficio.

El artículo 330 del Código Penal de California prescribe
lo siguiente:

"*Juegos prohibidos. Pena.*—Toda persona que apunte, juegue,
lleve a cabo, abra o hiciere abrir o que dirija como principal o em-
pleado con remuneración o sin·ella, cualquier juego de faro, monte,
ruleta, *lansquenet, ruoge et noir,* ronda, *tan, fan-tan, stud-horse,
poker,* siete y media, veinte y una, *hokey pokey,* o cualquier juego
de banca o interés con barajas, dados o de cualquier otra clase, por
dinero, cheques, crédito o alguna otra cosa representando valores y
toda persona que juegue o apueste a favor o en contra en cualquiera
de dichos juegos prohibidos, será culpable de un delito menos grave
(*misdemeanor*) y podrá ser castigada con una multa que no sea me-
nor de cien dollars, o con prisión en la cárcel que no excederá de
seis meses, o con ambas penas, multa y prisión."

Se verá, por tanto, de una comparación que se haga, que
el artículo 299 del Código Penal, según fué aprobado original-
mente por nuestra legislatura, era para todos sus fines idén-
tico al estatuto de California. Por consiguiente, habiendo sido
tomado nuestro estatuto del de California, debe presumirse
que la legislatura adoptó dicho artículo con aquella interpre-
tación que le dieron al mismo las cortes de California. *Pue-
blo de Puerto Rico* v. *Rivera,* 7 D. P. R., 305; *Pueblo de Puerto
Rico* v. *Colón,* 15 D. P. R., 680; *James* v. *Appel,* 192 U. S.,
429; *The Copper Queen Mining Co.* v. *Arizona,* 206 U. S.,
475; *Kealoha* v. *Castle,* 210 U. S., 154.

La palabra "jugar" (*play*) que aparece en la primera parte de ese estatuto ha sido invariablemente considerada por las cortes de California que se emplea en el mismo sentido general que las palabras "apuntar" (*deal*), "dirigir" (*conduct*), o "llevar a cabo" (*carry on*). La persona o personas que apunte, dirige o lleva a cabo, etc., maneja y controla las reglas del juego y fija las condiciones del mismo, y recibe beneficios por ello. La palabra "jugar" (*play*) un juego prohibido se emplea en esta parte del estatuto en tal sentido. En el caso de *People* v. *Beatty,* 14 Cal., 572, la acusación contenía las palabras "apuntó y jugó un juego de faro" (*did deal and play a game of faro*). La palabra "jugar" (*play*) según en la misma se usó, es equivalente a "abrir para jugar" (*open for play*) o "echar para jugar" (*spread for play*); porque podría, no obstante, considerarse que una persona se encontraba tomando parte en el juego aun cuando la misma solamente era la dueña, controlaba o proporcionaba el medio para jugar. En el caso de *People* v. *Gosset,* 93 Cal., 641, se declaró que las palabras alegadas en la acusación en las que se imputaba al acusado que "apuntó" (*did deal*) "jugó" (*play*) "dirigió" (*conduct*) y "llevó a cabo" (*carry on*) un juego de faro, eran constitutivas de un solo delito resultando de las mismas que la palabra "jugar" (*play*) se usaba en el mismo sentido general que "dirigir" (*conduct*) o "llevar a cabo" (*carry on*). En el caso de *El Pueblo* v. *Ah Own,* 85 Cal., 585, la corte sostuvo una instrucción en la cual se expresaba que la palabra "jugar" (*play*) según allí había sido usada, no se refería a aquellas personas que juegan o apuesten (*play or bet at*) a favor o en contra del juego, a saber, aquellos que aparecen especificados en la segunda parte de nuestro estatuto.

La palabra "jugar" (*play*) fué específicamente interpretada en el caso de *People* v. *Ah Yem,* 53 Cal., 247, en cuyo caso se declaró que una persona que *jugaba* o *apostaba* (*play at or bet at*) en un juego, no podía ser considerada como que *jugaba* (*play*) en el mismo sentido de *dirigir o llevar a efecto,* etc.

(*conduct, carry on, etc.*).    A la misma interpretación ha de llegarse de acuerdo con el principio de *noscitur a sociis*.

En el caso de *People* v. *Sam Lung,* 11 Pac., 673, se resolvió que el estatuto no estaba limitado a los dueños y empleados, pero el objeto de la resolución es sostener la teoría de que alguien debe dirigir, llevar a cabo o controlar el juego.

Una interpretación parecida ha sido dada a un estatuto semejante en el Estado de Washington, *State* v. *Preston,* 95 Pac., 83; *State* v. *Gaasch,* 105 Pac., 817; *State* v. *Hardwick,* 114 Pac., 873.    En el caso de *State* v. *Gaasch* la corte se expresó en los siguientes términos:

"La cuestión a discutir se refiere a la suficiencia de la acusación. Se verá que la misma no imputa a los acusados, ya como dueños, propietarios, empleados o ayudantes, o que tuvieran de algún modo que pudiera ser castigado por el estatuto algo que ver con el juego.    Según se expresó en el caso de *State* v. *Preston,* 49 Wash., 298, 95 Pac., 82, y en el de *State* v. *Burns,* 102 Pac., 886, el objeto del estatuto penal fué el de suprimir los sitios de juegos y castigar a aquellas personas que se ocupaban en fomentarlos.    Por tanto, considerando el objeto de la ley así como su letra, para que pueda dictarse una sentencia condenatoria por un delito grave (*felony*) debió haberse hecho en la acusación alguna alegación de la condición de ser dueño.    No es suficiente con expresar que la persona a quien se imputa el delito simplemente, jugó en el juego, sino que debe alegarse en dicha acusación su relación como dueño, propietario, empleado o ayudante de aquella persona que de modo determinado está relacionada con el referido juego.    Este punto está sostenido por las autoridades. *State* v. *Dennison,* 60 Neb., 157, 82 N. W., 383; *Brazele* v. *State,* 86 Miss., 286, 38 South, 314.''

Resulta claro de las palabras "jugar en" (*play at*) o "apostar" (*bet*) usadas en la parte última del artículo que no fué el objeto aplicar la palabra "jugar" (*play*) a la persona que simplemente tomaba parte o apostaba en un juego. *People* v. *Sam Lung,* 11 Pac., 673, arriba citado.    Si la legislatura hubiera tenido la intención de prohibir todas las clases de juegos, pudo haber prohibido a toda persona que jugara cualquier juego de azar por dinero. *State* v. *Bryant,* 2 S. W., 837.

De un examen de los anteriores casos, se verá claramente que el objeto fué el de suprimir todos los juegos especificados en el estatuto en los cuales alguna persona dirigía o manejaba el juego en el cual dicha persona o alguna otra recibía una ganancia o beneficio por el mero hecho de abrir, manejar o dirigir el referido juego. En todos los casos en que se han dictado sentencias condenatorias en los estados del Pacífico, el acto imputado ha sido uno de carácter público o un juego de banca como el de faro.

El artículo 299 de nuestro Código Penal quedó en vigor hasta el año 1908 en que se agregó al estatuto la palabra *poker* a la lista de juegos prohibidos. El juego de *poker* puede llevarse a efecto sin una banca, o persona que lo dirija, y dicho juego por lo general se efectúa privadamente o en un club o casino, tocando el turno sucesivamente a cada uno de los jugadores. Sin embargo, puede efectuarse el juego de manera tal que una persona bien como dueña, propietaria o banquero, pueda obtener una ganancia o beneficio exigiendo una pequeña suma en cada jugada, quedando entonces comprendido el juego en la prohibición estatutaria. Como la legislatura añadió la palabra *poker* y no hizo alteración alguna de ningún otro modo en la naturaleza del juego, es de aplicación el principio de *noscitur a sociis* del cual nos ocuparemos después. La legislatura aprobó por último en el año 1910 la siguiente ley:

"Sección 1ª.—El artículo 299 del Código Penal queda por la presente enmendado del modo siguiente:

" 'Artículo 299.—Toda persona que jugare, tomare parte, o tuviere establecido, abriere o hiciere abrir o que dirigiere como principal o empleado, por alquiler o de otro modo, cualquier juego de faro, monte, ruleta, *fan-tan, poker,* siete y media, veintiuna, *hokey-pokey* o cualquier juego de azar, con barajas, dados o de cualquiera otra clase, por dinero, cheques, crédito o fichas representando valores, así como toda persona que jugase o apostare a favor o en contra, en cualquiera de dichos juegos prohibidos, será reo de *misdemeanor,* incurriendo en multa que no excederá de quinientos dollars, o cárcel

por un término máximo de seis meses, o ambas penas, las antedichas multa y prisión.

" 'Si una persona presta juramento ante un juez de paz, municipal o de distrito al efecto de que cree, o tiene motivo probable para creer de que ilegalmente se está usando de una casa u otro edificio, habitación o local para casa de juego pública con el fin de jugar dinero u otra clase de bienes, o de que se ocupa, utiliza, o se tiene para la explotación de una lotería, o para la explotación del juego conocido como "lotería de *policy*," o *"policy,"* y que concurren allí personas con tal objeto, el mencionado juez de paz, municipal o de distrito, caso de que le fueren presentadas pruebas satisfactorias, dictará una orden de allanamiento ordenando a cualquier márshal u oficial de policía que entre en dicha casa, edificio, habitación o local, y arreste a los que la tuvieren, a toda persona que en forma alguna ayudare a la explotación de la misma, bien como conserje, portero, vigilante o de otro modo, a todos los que allí se encontraren participando del juego en alguna forma, y a todos los que estuvieren presentes, participaren o nó en el dicho juego, si se encontraren en dicho local cualesquiera billetes de lotería u otros implementos, aparatos o materiales de cualquiera forma de jugar, y que tome bajo su custodia todos los implementos, aparatos o materiales, de manera de poderlas presentar ante alguna corte o juzgado para su disposición de acuerdo con la ley. Todo artículo y propiedad embargada según las disposiciones de esta sección, excepción hecha del dinero, será confiscado y destruído al probarse ante la corte que dichos artículos y propiedad se usaban para el juego, y todo el dinero que así se embargare ingresará en el Tesoro Insular, en la misma forma en que se ingresan las multas y costas. El mandamiento anteriormente mencionado no se extenderá a menos que hubiere causa probable, basada en la declaración escrita y jurada (*affidavit*) del denunciante, en la cual se nombre o describa la persona o personas acusadas de violar esta sección, así como la casa o edificio que haya de allanarse y registrarse; y el juez de quien se solicitase el mandamiento deberá antes de expedirlo, tomar declaración bajo juramento al denunciante y a cualquier testigo que presentase, tomando las declaraciones juradas de dichos testigos por escrito, y haciéndolas firmar por las personas que las prestasen.' "

Se ha sugerido que al adicionar las palabras *poker* y "cualquier juego de azar" (*any game of chance*) la legislatura tuvo la intención de prohibir toda clase de juegos ilegales. Se verá,

sin embargo, que los únicos cambios que se han hecho en la
parte principal del estatuto han sido las palabras adicionales
"o de cualquier juego de azar" (*or any game of chance*) de-
biendo, por consiguiente, regir el principio de *noscitur a sociis.*
La regla se expresa en el sentido de que cuando en un estatuto
las palabras de determinada significación van seguidas de
otras palabras de sentido general que no son tan específicas y
limitadas, la palabra o palabras generales deberán ser inter-
pretadas en el sentido de que son aplicables a las personas o
cosas de igual clase, según se designan las mismas en la deter-
minada palabra o palabras, a menos que aparezca que la
intención ha sido distinta. *Miller* v. *State,* 23 N. E., 95. En
ese caso se resolvió que una acusación presentada de confor-
midad con un estatuto que prescribe que cualquier persona
que "seduce o lleva a una mujer hasta entonces reputada por
pura del sitio en que se encuentre a una casa de mala reputa-
ción o a algún otro sitio para fines de "prostitución," no es
suficiente a menos que en la misma se alegue que el sitio
adonde fué llevada era una casa de mala reputación u otra por
el estilo. Y no es suficiente con que se alegue que el lugar
adonde fué llevada era una casa habitación, y se cita el caso de
*Berg* v. *Baldwin,* 31 Minn., 541. Otras palabras de sentido
general han sido interpretadas de tal modo en los siguientes
casos: *People* v. *Richards,* 108 N .Y., 142–143; *McCaffin* v.
*City of Cohoes,* 30 Am. Rep., 309; *Burks* v. *Bosso,* 180 N. Y.,
341; *State* v. *Lowry,* 4 L. R. A., N. S., 535; *Sims* v. *U. S.
Trust Co.,* 103 New York, 478.

En el caso de *State* v. *Bryant,* 2 Southwestern Rep., 837
citado anteriormente, la acusación se fundó en el artículo
1548, el cual es como sigue:

"Art. 1548. *Apuestas sobre juegos.*—Toda persona que apueste
cualquier cantidad de dinero o propiedad en una mesa de juego,
banca o sistema de juego, que esté prohibido por el artículo anterior,
o en o sobre cualquier otro sistema de juego, o que apueste en cual-
quier juego que se efectúe o en dicha mesa de juego, u otro sistema
de juego, o que preste o facilite algún dinero o propiedad a cual-

quiera otra persona para ser apostada en la forma específica anterior, y para que se emplee de tal manera, o que esté interesada de modo alguno en dicho juego o apueste en el mismo, de ser declarada culpable, será reo de *misdemeanor* y castigado con multa que no excederá de veinte y cinco dollars ni será menor de diez dollars.''

El artículo precedente es como sigue:

*"Mantenimiento de sistemas de juego.*—Toda persona que ponga o tenga una mesa o sistema de juego, conocido ordinariamente por A. B. C., banca de faro, E. O., ruleta, *equality, keno,* o cualquier clase de mesa o sistema de juegos, adaptada, dedicada y proyectada para el fin de jugar cualquier juego de azar por dinero o propiedad, y que induzca, atraiga o permita que cualquier persona apueste o juegue en o sobre dicha mesa de juego o sistema de juego o a favor o en contra del que lo conduce, será al ser declarada culpable, reo de *misdemeanor* y castigada con multa que no excederá de mil dollars.''

Se alegó que el acusado había puesto una suma de dinero en un juego de azar que se efectuaba por medio de una escopeta para tirar al blanco, alegando además que dicha escopeta y rueda de blanco constituían un sistema de juego prohibido y la corte dijo:

''Pero prescindiendo de la conocida regla a que ya se ha hecho referencia y teniendo en cuenta solamente la razón del caso, no es posible que la legislatura haya podido tener en cuenta que una 'escopeta o fusil y rueda de blanco' constituyeran un sistema de juegos ilícitos 'adaptadas, dedicadas, y para el objeto de efectuar cualquier juego de azar por dinero o propiedad.' Si un fusil o escopeta y una rueda de blanco han de ser considerados como tales, entonces un juego de bolas de cristal también estaría comprendido dentro de las prescripciones contenidas en el estatuto. Ciertamente que de acuerdo con esa interpretación tan lata, se hace difícil expresar cuáles sean los juegos que pueden estar prohibidos y castigados.''

Las palabras adicionales de nuestro estatuto ''juegos de azar'' no pueden tener otro fin que el prohibir cualquiera otro juego de igual o semejante naturaleza a los ya enume-

rados y bajo las mismas condiciones con respecto al apunte, dirección, apertura y modo de llevar a efecto el juego.

Si por casualidad un sistema diferente hubiera regido en Puerto Rico con anterioridad a la adopción del estatuto de California y todos los juegos de azar hubiesen sido castigados aquí, entonces podría haber razón para alegar que la legislatura tuvo la intención de restablecer el *status quo*. Pero el caso es distinto. De acuerdo con la ley española, el juego público que se castigaba era aquel en el cual alguien obtenía una ventaja o barato determinado. La costumbre tradicional en Puerto Rico es igual a la de California. Artículo 354 del Código Penal de Cuba y Puerto Rico y las sentencias del Tribunal Supremo de España de 13 de abril de 1880, 28 de diciembre de 1887 y 1º. de enero de 1889.

El estatuto, en todos sus particulares es solamente aplicable a dichos juegos públicos o cuasi públicos, por ejemplo, como cuando una persona inicia o comienza un juego como dueño o fomenta el mismo de igual manera que si fuera el dueño, como sucede en el caso en que una persona recibe algún beneficio o ganancia aunque no juegue o apueste en dicho juego. Este principio resulta estar aún más sostenido por el párrafo que se ha adicionado en la ley de 1910. El mandamiento a que allí se hace referencia solamente puede dirigirse contra una casa de juegos públicos. Creemos, por tanto, que ni de la denuncia ni de la prueba quedaron establecidos los elementos que prohibe el estatuto. No se hizo acusación alguna ni se presentó prueba de que alguien se encontrara precisamente *dirigiendo* o *apuntando* en un juego en el sentido en que se expresa el estatuto. Solamente puede declararse culpable a una persona por apuntar o jugar en un juego cuando alguien *dirige, apunta* o *juega* en el referido juego prohibido, en el sentido en que estas palabras han sido interpretadas. El mero hecho de tomar parte en un juego de *poker* en una casa particular es una cuestión que está fuera del alcance del estatuto, siempre que no exista alguna persona.

que cobre algún "barato" o se beneficie de algún modo por sostener o proporcionar el juego.

Cualquiera duda que pudiera surgir debe resolverse a favor de la libertad del individuo e inmunidad del acusado. 76 *U. S.* v. *Wiltberger,* 5 Wheaton, 76; *State* v. *Anderson,* 112 Pac., 931; *State* v. *Hardwick,* 114 Pac., 873, citado anteriormente; *People* v. *Bryant,* 2 S. W., 837.

En el último de los casos que han sido citados, la corte se expresó como sigue: "Además, el estatuto que se considera es uno penal y criminal y como tal debe ser estrictamente interpretado. *Howell* v. *Stewart,* 54 Mo., 400; *Kritzer* v. *Woodson,* 19 Mo., 327; *Fusz* v. *Spaunhorst,* 67 Mo., 256; *U. S.* v. *Wilberger,* 5 Wheat., 76. Deben dichos estatutos ser estrictamente interpretados, o sea, de modo estricto en aquellas partes que están en contra del acusado pero liberalmente en las que le favorecen. Ninguna persona quedará sometida a dichos estatutos por meras deducciones, y cuando surgen dudas con respecto a su intervención, tales dudas deberán consideradarse únicamente a favor del acusado. Bish. St. Crimes, [2 Ed.], secs. 193, 194, 227."

Además, la prueba de la existencia de un juego de *poker* es defectuosa. Ninguno de los testigos declararon de modo categórico con respecto a dicho juego, sino que apareció a lo sumo de la prueba que se encontraban algunos hombres sentados alrededor de una mesa jugando con fichas en cambio de dinero por fichas y que se oyó decir a uno de los mismos "full de aces" (*ace full*). La minuciosa declaración hecha por uno de los testigos de que las palabras "full de aces" pertenecen al juego de *poker* no excluye la posibilidad de que dicha frase hubiera sido usada o fuera conocida como tal, según ha sido alegado por el apelante en otro juego. Sin embargo, el fundamento principal de esta sentencia ha sido que ni la denuncia ni la prueba han demostrado la existencia de un juego prohibido.

Por las razones anteriores debe revocarse la sentencia apelada.

*Revocada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociado Aldrey.

El Juez Asociado Sr. del Toro firmó haciendo constar estar conforme con la sentencia.

Juez disidente: Sr. MacLeary.

OPINIÓN CONCURRENTE DEL JUEZ ASOCIADO SR. DEL TORO.

El verdadero motivo que tengo para estar conforme con la revocación de la sentencia apelada, es el de que habiendo examinado cuidadosamente toda la prueba practicada, no la estimo suficiente para poder llegar a la conclusión de que el acusado en la fecha y en el sitio especificados en la denuncia jugó el juego prohibido denominado *poker.*

VOTO PARTICULAR DEL JUEZ ASOCIADO SEÑOR MACLEARY.

La Sección Segunda de la Corte de Distrito de San Juan dictó una sentencia en este caso el día 28 de octubre de 1911, declarando culpables a los acusados, del delito de jugar el juego prohibido conocido por *poker,* condenando a cada uno de dichos acusados a pagar una multa de $30 o en defecto de pago a 30 días de cárcel y la sexta parte de las costas. Contra esta sentencia se interpuso la debida apelación, habiendo sido los autos elevados a este tribunal el día 12 de marzo de 1912. En 25 de abril siguiente tuvo lugar la vista de esta apelación ante el tribunal en pleno, quedando luego sometido el caso a su consideración. Cerca de un año después ha sido resuelto a favor de los apelantes, revocándose la sentencia apelada y desestimándose la denuncia.

Estoy de acuerdo con la mayoría de los jueces de este tribunal en lo que respecta a la poca importancia de la alegación que ha sido presentada de haber estado los acusados expues-

tos anteriormente por el mismo delito; pero no lo estoy en cuanto a los otros tres puntos que se mencionan, o sea, (1) la insuficiencia de la denuncia; (2) la inaplicabilidad del artículo 299 del Código Penal a un juego que tiene lugar en una casa particular, y (3) la insuficiencia de la prueba para fundar en e'la la denuncia que ha sido presentada en este caso.

No es preciso hacer ningún examen de la prueba. Ella aparece en toda su extensión en la transcripción y opino como la corte sentenciadora, que es suficiente para fundar en ella el delito que se ha imputado a los acusados. Además, habiendo la corte sentenciadora tenido todos los testigos ante sí y oído las declaraciones que fueron prestadas por cada uno de los mismos, tenía dicha corte mejor oportunidad para formar un criterio correcto en cuanto a la suficiencia de la referida prueba, que la que pudo haber tenido cualquiera de los jueces de la corte de apelación después de haber examinado los autos.

No existe absolutamente nada en el estatuto propiamente considerado, que demuestre que no fuera la intención legislativa aplicar el artículo 299 del Código Penal a cualquier sitio comprendido dentro de los límites territoriales de Puerto Rico, ya sea éste una casa privada o pública, un *club* o una casa de juego. El estatuto no establece ninguna excepción y las cortes por consiguiente no tienen derecho a hacerla mediante interpretación. La denuncia está hecha con arreglo a las palabras del estatuto y con bastante precisión a fin de que resulte el delito que se imputa, claro y libre de ambigüedad y puedan los acusados tener conocimiento de cuál ha sido el de que se les acusa. La ley que castiga el delito de juegos prohibidos fué aprobada al redactarse primeramente el Código Penal que se adoptó en Puerto Rico en el año 1902. En dicha ley tal como fué decretada originalmente no se hacía mención del juego de *poker,* habiendo existido por varios años cierta duda con respecto a si la legislatura tuvo el propósito de incluirla en el estatuto. Para dejar resuelta este cuestión,

la Legislatura de Puerto Rico en el año 1910 aprobó una ley para enmendar el artículo 299 del Código Penal, en la forma siguiente:

"Toda persona que jugare, tomare parte, o tuviere establecido, abriere o hiciere abrir o que dirigiere como principal o empleado, por alquiler o de otro modo, cualquier juego de faro, monte, ruleta, *fantan, poker*, siete y media, veintiuna, *hokey-pokey* o cualquier juego de azar, con barajas, dados, o de cualquier otra clase, por dinero, cheques, crédito, a fichas representando valores, así como toda persona que jugase o apostare a favor o en contra, en cualquiera de dichos juegos prohibidos, será reo de *misdemeanor*, incurriendo en multa que no excederá de quinientos dollars, o cárcel por un término máximo de seis meses, o ambas penas, las antedichas multa y prisión."

Desde que fué aprobado este estatuto, el juego de *poker* en Puerto Rico ha sido un delito de *misdemeanor,* sin que para nada tenga que ver el sitio en que se ha jugado. Esto resulta completamente claro de una mera lectura que se haga del artículo a que hemos hecho referencia. No es necesario hacer ningún estudio del mismo.

Aun cuando la palabra *poker* hubiera sido incluída en la primitiva ley, resultaría tan claro este estatuto que cualquier caminante podría acercarse y leerlo, pero cuando ha sido incluída por la legislatura en una ley especial aprobada con tal fin ocho años después de haber sido decretada la primera, entonces la intención de la legislatura resulta demasiado clara para poder ser discutida. Indudablemente que el legislador tuvo la intención de prohibir el juego de *poker* en Puerto Rico, y así lo hizo precisamente, pues si se considera la naturaleza misma de dicho juego, se verá que no puede llevarse a cabo sin que medie apuesta de dinero, y que el objeto del mismo es la ganancia de dinero y no otra cosa. He sabido por un experto, que el juego de *poker* hasta puede jugarse por palillos de dientes, pero nunca se hace a menos que éstos representen moneda legal.

La primera regla de interpretación a la cual están subordinadas todas las demás, se refiere a que una ley deberá ser

interpretada según la intención que aparezca de la faz de dicha ley haber tenido la legislatura. *U. S.* v. *Fisher*, 109 U. S. 145; *Jones* v. *The Guaranty Co.*, 101 U. S., 625; *Indianapolis Rail-road Co.* v. *Horst*, 93 U. S., 300; *United States* v. *Hogg*, 3 Fed. Rep., 294; *United States* v. *Goldenberg*, 168 U. S., 102.

También es una regla de interpretación bien establecida que *cuando la ley ha sido expresada en términos claros e inequívocos*, ya sean éstos generales o limitados, se entenderá que fué la intención de la legislatura la que aparece claramente de los mismos y por consiguiente *que no hay lugar a hacer ninguna interpretación.* El Juez Asociado Sr. Lamar hizo referencia y estudió cuidadosamente este principio en el caso de *Lake County* v. *Rollins,* 130 U. S., 670, el cual ha sido también observado en los casos de *Dewey* v. *United States,* 178 U. S., 521; *Calderón* v. *Atlas Steamship Co.,* 170 U. S., 280; *Yerke* v. *United States,* 173 U. S., 442; *Folsom* v. *United States,* 160 U. S., 127; *Thornley* v. *United States,* 113 U. S., 313; *Doggett* v. *Florida Railroad Co.,* 99 U. S., 78; *New Lamp Chimney Co.* v. *Ansonia Brass Co.,* 91 U. S., 663; *Texas* v. *Chiles* (21 Wallace), 88 U. S., 491, y en veintenas de otros casos que pudieran citarse.

No hay necesidad y pudiera decirse que es imposible interpretar un estatuto a no ser que sea ambiguo, y el artículo 299 del Código Penal no puede ofrecer ambigüedad alguna sino para un criterio microscópico. El tratar de dar una interpretación judicial a términos tan claros e inequívocos, solamente conduce a establecer dudas, no habiendo existido ninguna antes y para confundir el criterio del investigador. Es ocioso tratar de demostrar lo que es cierto por sí mismo. La lógica empleada con tal fin puede dirigir mal o confundir la inteligencia de una persona, pero no puede dar fuerza alguna a las convicciones anteriores de los hechos que claramente son evidentes por sí mismos. Mientras más se hable de un estatuto que es tan claro e inequívoco como éste, mayor será la confusión que resulte de la discusión. Desde el primer día que la cuestión fué sometida a este tribunal no tuve duda al-

guna con respecto a la intención de la legislatura; y el hecho
de haber sido necesario un término de cerca de doce meses
para interpretar una opinión según la cual esta intención
puede resultar oscura tal vez, muestra por sí que la intención
es demasiado clara para ser discutida. Los jueces no deben
al interpretar los estatutos y en sus investigaciones en busca
de precedentes olvidar que son hombres, sino que deben seguir
la norma fiel del sentido común como las demás personas.

La Ley Civil está en perfecta armonía con la Ley Común
con respecto a esta cuestión. El mismo principio referente
a la interpretación de estatutos claros y libres de ambigüe-
dades que ha sido tomado de las decisiones y citados en esta
opinión, aparece expresado en términos categóricos en nuestro.
Código Civil que procede del Código Español y por medio de
éste de la Ley Romana. En el primer capítulo del mismo que
trata de las leyes, sus efectos y reglas generales para su apli-
cación, declara en su artículo 13 en término inequívocos el pre-
cepto que debemos observar.

Dicho artículo es el siguiente:

"Artículo 13. Cuando la ley es clara y libre de toda ambigüedad,
la letra de ella no debe ser menospreciada bajo el pretexto de cumplir
su espíritu."

Aunque esta declaración está comprendida en el Código
Civil, es de aplicación lo mismo a las leyes penales que civiles
y no existe diferencia en uno u otro caso. En este precepto
de nuestro código encontramos sabiduría doblemente purifi-
cada, concentrada y reducida a una regla para gobierno de
todas las cortes de Puerto Rico. Reconozco su autoridad y
aplicación al presente caso, y a todos los casos.

Las leyes de Puerto Rico, según el criterio que tengo de
ellas, han sido puestas en los libros estatutarios con el fin de
que se cumplan y no creo que es mi deber tratar de buscar
argumentos y hacer una indebida aplicación de autoridades
de manera tal que queden anulados los estatutos decretados
por el poder legislativo, con el fin de regular la norma de con-

ducta de nuestro pueblo de acuerdo con los dictados de la sana moral.

Considerando como considero que la prueba es suficiente, y el estatuto claro y libre de ambigüedades, y que la demanda ha sido presentada de conformidad con el mismo, no abrigo duda alguna con respecto a la culpabilidad de los acusados, y soy de opinión por tanto de que la sentencia debe ser confirmada.