El Juez Asociado Señor Ortiz se inhibió. El Juez Asociado Señor Alonso Alonso no intervino.

EL PUEBLO DE PUERTO RICO, apelado, *v.* FRANCISCO MO-RALES DÍAZ, acusado y apelante.

*Número:* CR-87-41    *Resuelto:* 24 de diciembre de 1987

---

*Ismael Colón Birriel*, abogado del apelante; *Norma Cotti Cruz, Subprocuradora General* y *Josefa A. Román García, Procuradora General Auxiliar*, abogadas de El Pueblo.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

"No hay hecho jurídico que rebase en importancia al de la muerte. La muerte, el más conmovedor fenómeno *vitae hominis*, remece con violencia atronadora hasta el último inciso del ordenamiento legal, produciendo una verdadera conmoción en el mundo jurídico." R. Ato del Avellanal, *Proyecciones jurídicas de la muerte en diversas ramas del derecho*, 9 Rev. C. Abo. La Plata 87, 89 (1967). Esta realidad es la clave para la disposición final de la presente apelación.

I

En el Tribunal Superior, Sala de Humacao, Francisco Morales Díaz fue acusado de infringir los Arts. 7 y 32(b) de la Ley de Armas, 25 L.P.R.A. secs. 417 y 442(b), y el Art. 94 del Código Penal, 33 L.P.R.A. sec. 4031, sobre agresión simple. Un jurado rindió veredicto de culpabilidad. Fue sentenciado a cumplir seis (6) meses de reclusión en los primeros cargos[1] y a satisfacer una multa de $500 por el delito de agresión simple.

---

[1] Suspendidos ambos cargos bajo la Ley Núm. 259 de 3 de abril de 1946, según enmendada, 34 L.P.R.A. sec. 1027.

No conforme, el 24 de abril de 1987, Morales Díaz apeló. A partir de ese momento, su abogado comenzó los trámites tendentes a perfeccionar el recurso. Oportunamente preparó y obtuvo la certificación de la Exposición Narrativa de la Prueba.

El 3 de noviembre fuimos informados de que Morales Díaz había muerto como consecuencia de un accidente automovilístico acaecido el 29 de octubre. Sin embargo, su abogado nos pidió prórroga para consultar a los familiares en torno al curso de acción ulterior de la apelación. El 13 de noviembre, éste nos sometió un alegato en apoyo de la revocación de las sentencias. Por su parte, el Procurador General nos pide que desestimemos la apelación por académica.

## II

No es menester examinar los méritos de los errores señalados. Con la muerte de Morales Díaz debe ponerse de inmediato punto final al proceso y ordenar retroactivamente el sobreseimiento de las acusaciones. Después de todo, "la defunción borra del mapa jurídico a un ser que es objeto de derechos y obligaciones *modi pleni* . . .". Ato del Avellanal, *op. cit.* Este resultado se impone por imperativo de los Arts. 77 y 81 del Código Penal preceptivos de que la muerte del imputado o penado extingue la acción penal y las penas —33 L.P.R.A. secs. 3411 y 3431— y la interacción de principios constitucionales cardinales.

Se ha dicho que la extinción de la causa o del castigo penal es consecuencia de "lógica y fácil percepción". D. Nevares-Muñiz, *Código Penal de P.R., Comentado y Revisado*, San Juan, Rev. C. Abo. P.R., 1986, pág. 131. Sin embargo, "[e]ste principio, hoy por todos reconocido, no siempre fue observado, y en el mismo derecho romano, pero sobre todo en el derecho de la Edad Media y a[u]n en épocas posteriores, se encuentran frecuentes casos de penas impuestas a

los cadáveres. Actualmente nadie duda que la muerte del delincuente no sólo extingue la acción penal sino también la pena de carácter personal a[u]n cuando haya recaído sentencia firme." E. Cuello Calón, *Derecho Penal*, Barcelona, Ed. Bosch, 1975, T. I, Vol. 2, págs. 741–742; J. Luzón Cuesta, *Compendio de Derecho Penal*, 2da ed. rev., Madrid, Dykinson, 1987, págs. 293–294.

La glosa científica clasifica la causa de extinción por muerte como de naturaleza física atribuible al carácter inherentemente personal del evento. A. Quintano Ripollés, *Curso de Derecho Penal*, Madrid, Ed. Rev. Der. Privado, 1966, pág. 585. Se funda, además, en el "principio de individualización de la pena, ésta queda limitada al autor del delito". M. Ossorio y Florit, *Código Penal de la República Argentina: comentarios, jurisprudencia, doctrina, legislación complementaria*, 3ra ed., Buenos Aires, Ed. Universidad, 1982, pág. 81.

Algunos autores discuten el ámbito de aplicación de estos principios y distinguen las distintas etapas del proceso. A. Arroyo de las Heras, *Manual de Derecho Penal: El Delito*, Madrid, Ed. Aranzadi, 1985, págs. 312–313. Aunque reconocemos que en estricta técnica, procesalmente cabría el establecimiento de ciertas dicotomías, si hemos de ser consistentes con la presunción de inocencia y el derecho de apelación —consagrados en nuestro patrimonio constitucional y ordenamiento procesal vigentes— tenemos que descartar tales distinciones y aplicarles los efectos extintivos en cualquier momento de la muerte.

■ Igual criterio prevalece en la jurisdicción federal. El fallecimiento del imputado o convicto anula no sólo el trámite apelativo, sino que pone fin a todos los procedimientos relativos a la acusación desde su origen. *Durham* v. *United States*, 401 U.S. 481, 483 (1971); *United States* v. *Bechtel*, 547

F.2d 1379 (9no Cir. 1977). Nota, *Criminal Appeals Abated*, 80 A.L.R. Fed. 446.

■ Según este enfoque la apelación se desestima *con el mandato de que el tribunal de instancia anule y archive la acusación*. Esta anulación impide al Estado recobrar cualesquiera costas impuestas al acusado. El razonamiento en que se apuntala esta norma fue concebido inicialmente en *United States* v. *Daniels*, 47 U.S. (6 How) 11, 13 (1848). Allí filosóficamente se expuso "que todo acto íntimo o daño criminal, público, es sepultado con el ofensor". (Traducción nuestra.) Este pensamiento en su contenido moral, místico y jurídico concuerda con lo citado en *Pueblo* v. *Lebrón González*, 113 D.P.R. 81, 82 (1982), a saber, que "[la] justicia . . . es el único amigo que acompaña al hombre después de la muerte; todo lo demás perece con el cuerpo".[2]

Por los fundamentos expuestos, *se dictará sentencia que ordena el sobreseimiento de las acusaciones y sentencias objeto de esta apelación.*

---

[2] Citado por A.V. Fernández, *Función Creadora del Juez*, Buenos Aires, Ed. Abeledo-Perrot, 1970, pág. 9.