EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Estado Libre Asociado de Puerto Rico<br><br>            Peticionario<br><br>                v.<br><br>  Juan M. Rodríguez Santana C/P Higgins y Otros<br><br>            Recurrido | Certiorari<br><br>2005 TSPR 13<br><br>163 DPR _____ |

Número del Caso: CC-2003-956

Fecha: 24 de febrero de 2005

Tribunal de Circuito de Apelaciones:

                Circuito Regional IV

Juez Ponente:

                Hon. Frank Rodríguez García

Abogado de la Parte Recurrida:

                Lcdo. Antonio Bauzá Torres

Oficina del Procurador General:

                Lcdo. Roberto J. Sánchez Ramos
                Procurador General

Materia: Ejecución de Sentencia

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Estado Libre Asociado de
Puerto Rico

     Peticionario

         v.

                            CC-2003-956      Certiorari

Juan M. Rodríguez Santana
C/P Higgins y Otros

     Recurrido

Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO

San Juan, Puerto Rico, a 24 de febrero de 2005.

Hoy nos corresponde resolver si la pena de restitución se extingue con la muerte del penado, o si por el contrario, ésta es transmisible a sus herederos.

Tras la exégesis de las disposiciones aplicables del Código Penal de Puerto Rico y el análisis de la naturaleza y objetivos de la pena de restitución, concluimos que ésta se extingue con la muerte del penado.

I.

Juan M. Rodríguez Santana, también conocido como Juan M. Higgins, ex-alcalde del Municipio de

Humacao, fue hallado culpable de haber cometido setenta y siete (77) infracciones al Artículo 166(a) del Código Penal de Puerto Rico, 33 L.P.R.A. § 4272(a) (apropiación ilegal agravada) y trece (13) infracciones al Artículo 216 (a) y (k) del Código Penal, 33 L.P.R.A. § 4391 (a) y (k) (delitos contra los fondos públicos).

Rodríguez Santana fue sentenciado a cumplir, concurrentemente, doce (12) años de reclusión por los delitos de apropiación ilegal y diez (10) años por los delitos contra los fondos públicos. Además, se le impuso una pena de restitución de $90,000 dólares, la que fue computada a razón de $1,000 por cada uno de los cargos por los que fue condenado. Dicho dictamen fue confirmado por este Tribunal en el caso Pueblo v. Rodríguez Santana, 146 D.P.R. 860 (1998).

Posteriormente, el tribunal de instancia, por solicitud de Rodríguez Santana, modificó su sentencia para excluir del cómputo de la pena de restitución las cantidades correspondientes a los trece (13) cargos por infracción al Artículo 216, incisos(a) y (k), del Código Penal, supra. Esto, en atención a que el Código Penal no contemplaba expresamente la pena de restitución para dichos delitos. Por tal razón, la pena de restitución se redujo de $90,000 a $77,000.

En el año 2000, el Estado, con el propósito de cobrar la pena de restitución en cuestión, presentó una "Demanda en Ejecución de Sentencia" en el Tribunal de Primera

Instancia, Sala Superior de lo civil de Humacao. Se incluyeron como demandados a Rodríguez Santana, a su esposa y a la sociedad legal de gananciales compuesta por éstos.

Así las cosas, Rodríguez Santana falleció durante la pendencia del litigio. De ahí que el Estado notificara su intención de enmendar la demanda para traer al pleito a la Sucesión de Rodríguez Santana. Ante tal situación, la parte demandada adujo que procedía desestimar la demanda por el fundamento de que la pena de restitución se había extinguido con la muerte del penado.

El Tribunal de Primera Instancia, tras acoger los argumentos planteados por la parte demandada, desestimó la demanda. Oportunamente, el Estado presentó un recurso de apelación ante el entonces Tribunal de Circuito de Apelaciones, hoy Tribunal de Apelaciones, el cual confirmó el dictamen del tribunal de instancia. Inconforme, el Estado ha recurrido ante nos.

Mediante Resolución de 30 de enero de 2004, expedimos el auto de certiorari. Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

## II.

El Código Penal de Puerto Rico[1] es diáfanamente claro al disponer cuáles son las circunstancias particulares que han de concurrir para que se extinga la pena. Veamos.

---

[1]El Código Penal citado se refiere al Código vigente a la fecha presente, Ley Núm. 115 de 22 de julio de 1974, según enmendada. Por consiguiente, no hace referencia al Código Penal que entrará en vigor el 1ro de mayo de 2005, Ley Núm.

continúa...

La Sección Quinta de la Parte General del Código Penal, titulada "De las penas" se divide en siete capítulos en los que, entre otros asuntos, se establece cuáles son las penas que se reconocen en nuestro ordenamiento jurídico, cuándo aplican y cómo se ejecutan, a saber: (I) Clases de Penas; (II) De las Penas Aplicables a las Personas Naturales; (III) De las Penas Aplicables a las Personas Jurídicas; (IV) Responsabilidad Civil; (V) De las Aplicación de las Penas; (VI) Determinación de la Reincidencia; y, (VII) Sobre Concurso de Delitos. Arts. 38-65 del Código Civil. 33 L.P.R.A. secs. 31-92.

El Artículo 38 del Código Penal, 33 L.P.R.A. § 3191, ubicado en el Capítulo I de dicho cuerpo de ley, incluye un listado taxativo de las penas que se reconocen en nuestro ordenamiento jurídico, al disponer:

> Las penas que este Código establece son:
>
> (a)  Reclusión.
> (b)  Restricción domiciliaria.
> (c)  Multa.
> (d)  Suspensión.
> (e)  Cancelación de certificado de incorporación.
> (f)  Suspensión o revocación de licencia
> (g)  Disolución
> **(h)  Restitución**
> (i)  Prestación de servicios en la comunidad. (Énfasis suplido)

---

[1] ...continuación

149 de 18 de junio de 2004, según enmendada. Independientemente de que el nuevo Código Penal aún no ha entrado en vigor (salvo sus Artículos 312 y 313), el articulado pertinente al caso de marras no varía de manera significativa. Nótese que el Anejo del nuevo Código Penal contiene una "Tabla de concordancias y antecedentes entre el Código Penal, 1974, y el nuevo Código Penal Parte General" que puede servir como instrumento útil de contrarreferencia entre ambos códigos.

El Artículo 39 del Código Penal, 33 L.P.R.A. § 3201, el cual aparece tipificado en el Capítulo II titulado "De las Penas Aplicables a las Personas Naturales", establece:

> Las penas que este Código establece para las personas naturales son:
>
> (a) Reclusión.
> (b) Restricción domiciliaria.
> (c) Multa.
> (d) Suspensión o revocación de licencia, permiso autorización.
> **(e) Restitución.**
> (f) Prestación de servicios en la comunidad.
> (Énfasis suplido)

Tras enumerar y definir las penas que reconoce dicho cuerpo de ley, el Código Penal determina expresamente cómo se extinguen esas penas previamente enumeradas. Sobre el particular, el Artículo 81, 33 L.P.R.A. § 3431, dispone lo siguiente:

> **Las penas se extinguen por:**
> **(a) muerte del penado**
> (b) indulto u otra acción de clemencia ejecutiva
> (c) cumplimiento de la sentencia impuesta
> (Énfasis Suplido.)

De una lectura del antes citado artículo se desprende, sin lugar a equívocos, que en nuestro ordenamiento jurídico las penas se extinguen con la muerte del penado. Merece especial énfasis el hecho de que el Artículo 81 no hace distinción alguna sobre los tipos de pena que se extinguen de esa forma. En virtud del lenguaje y espíritu inequívoco de la ley aplicable, la respuesta a la interrogante ante nos es forzosa: la restitución es una pena; todas las penas se extinguen con la muerte del penado; ergo, la pena de restitución queda extinta con la muerte del penado.

Los antes citados artículos del Código Penal responden de manera fehaciente la interrogante que se nos ha planteado; de ahí que baste con practicar un ejercicio de lógica y de exégesis estatutaria para dirimir la controversia ante nos. En reiteradas ocasiones la jurisprudencia de este Tribunal se ha hecho eco de la máxima recogida en el Artículo 14 del Código Civil, 31 L.P.R.A. § 14, cuya jurisprudencia interpretativa establece que cuando la ley es clara y libre de toda ambigüedad, venimos obligados a observar su letra. Comité Pro Permanencia de la Barriada Morales v. Miranda Marín, 2002 T.S.P.R. 138. Más aún, por medio de opinión del Tribunal emitida por el Juez Asociado Ramírez Bages, hemos reconocido que lo dispuesto en el referido Artículo 14, supra, consagrado en nuestro Código Civil, "'es de aplicación lo mismo a las leyes penales que civiles'". Meléndez v. Tribunal Superior, 90 D.P.R. 656, 660 (1964).[2]

De un examen en conjunto, tanto del antes referido postulado de exégesis, como del Artículo 81 del Código Penal, 33 L.P.R.A sec. 3212 (citado infra), se desprende la clara intención del legislador de establecer que la pena de restitución recae exclusivamente sobre el penado:

> En adición a la pena que se le imponga **al convicto** por el delito cometido, el tribunal podrá imponer la pena de restitución.

---

[2] Dicha opinión reitera lo expresado por el voto particular del Juez Asociado MacLeary en El Pueblo v. Benítez, 19 D.P.R. 246, 263 (1913). Véase, además, El Pueblo v. Ramos, 18 D.P.R. 993, 1004 (1912)." Meléndez v. Tribunal Superior.

> La pena de restitución consiste en la obligación **impuesta al convicto** por el tribunal de pagar a la parte perjudicada daños y pérdidas que le hubiere ocasionado a su persona o a su propiedad, como consecuencia de su acto delictivo. ... (Énfasis suplido).

Además resulta revelador que, entre los criterios que se toman en cuenta para fijar la cuantía de la pena de restitución, se encuentra la capacidad de pago del convicto. En caso de que el penado no contase con recursos, éste podría cumplir la pena con trabajo libre. Sobre el particular el antes citado artículo dispone:

> ...El tribunal, a solicitud del penado, después de dictada sentencia imponiendo el pago de restitución, discrecionalmente podrá autorizar el pago o amortización de la restitución o de la parte insoluta de la misma mediante la prestación por el convicto de trabajo libre bajo la supervisión y jurisdicción de la Administración de Corrección...

Amerita especial destaque que este Tribunal en el caso de Pueblo v. Morales Díaz, 120 D.P.R. 249, 251-252 (1987), ya tuvo oportunidad de adoptar la interpretación estatutaria antes esbozada. En dicho caso, expresamos:

> ...[La] defunción borra del mapa jurídico a un ser que es objeto de derechos y obligaciones modi pleni...'. Ato del Avellanal, op. cit. Este resultado se impone por imperativo de los Arts. 77 y 81 del Código Penal preceptivos de que la muerte del imputado o penado extingue la acción penal y **las penas** --33 L.P.R.A. secs. 3411 y 3431-- y la interacción de principios constitucionales cardinales.
>
> Se ha dicho que **la extinción de la causa o del castigo penal** es consecuencia de 'lógica y fácil

percepción'. D. Nevares-Muñiz, Código Penal de P.R., Comentado y Revisado, San Juan, Rev. C. Abog. P.R., 1986, pág. 131. Sin embargo, '[e]ste principio, hoy por todos reconocido, no siempre fue observado, y en el mismo derecho romano, pero sobre todo en el derecho de la Edad Media y a[u]n en épocas posteriores, se encuentran frecuentes casos de penas impuestas a los cadáveres. **Actualmente nadie duda que la muerte del delincuente no sólo extingue la acción penal sino también la pena de carácter personal** a[u]n cuando haya recaído sentencia firme.' [Citas omitidas]

**La glosa científica clasifica la causa de extinción por muerte como de naturaleza física atribuible al carácter inherentemente personal del evento.** [Citas omitidas]. **Se funda, además, en el 'principio de <u>individualización de la pena</u>, ésta queda limitada al autor del delito'**... (Énfasis Suplido).

En idénticos términos se expresa el reconocido tratadista de Derecho Penal, Santiago Mir Puig, al comentar el principio de que la pena se extingue con la muerte del penado:

Ahora bien, cabe interpretar que la muerte del posible reo extingue no sólo la acción penal, sino también la responsabilidad penal que pudiera haber nacido, si lo cometió, del hecho punible.

Que en puridad sería posible considerar subsistente la responsabilidad penal del sujeto tras su muerte, lo demuestra no sólo la existencia de frecuentes ejemplos históricos de penas impuestas a cadáveres... [No obstante, el Código Penal de España] excluye la posibilidad de transmitir a los herederos toda responsabilidad penal, personal o patrimonial, a diferencia de lo que ocurre con la responsabilidad civil. **Todo ello es consecuencia del principio**

> **de personalidad de las penas**, **característico del Derecho penal actual**. (Énfasis suplido, citas omitidas) Santiago Mir Puig, Derecho Penal, 5ª. Edición, Barcelona, Reppertor, S.L., (1998), pág. 777.

Adoptar la postura que propone el Estado, implicaría que los herederos de un convicto viniesen obligados a cumplir la pena de restitución que le impusieron a su causante por delitos que no fueron cometidos por éstos. Como acertadamente indica el tratadista Mir Puig: "El **principio de personalidad** impide castigar a alguien por un hecho ajeno. **Hoy nadie admite la responsabilidad colectiva que en otro tiempo llevaba a castigar a todos los miembros de una familia o pueblo por el hecho de uno de ellos**". (Énfasis suplido) Id. a la pág. 97.

## III.

El curso de acción que tomó el Estado en este caso no sólo es improcedente, sino que resulta extraño e inusitado, toda vez que desde sus inicios canalizó el reclamo de la pena de restitución a través de la presentación de un procedimiento judicial distinto, de naturaleza civil, que denominó "demanda de ejecución de sentencia". El articulado del Código Penal relativo a la pena de restitución establece expresamente cuál es el procedimiento a seguir para vindicar ese reclamo y específicamente dispone que la sala criminal que dicta la sentencia penal es la que conservará jurisdicción sobre el penado hasta que se satisfaga la pena o la misma sea dejada sin efecto. Sobre

el particular, el Artículo 81, supra, dispone, en lo pertinente:

> El tribunal conservará jurisdicción sobre el convicto a los fines del cumplimiento de la orden de amortización así dictada, incluyendo, en los casos apropiados, la facultad de dejar sin efecto dicha orden, exigir el pago total de la restitución, o en su caso, el balance insoluto de la misma.

No surge del expediente que en el presente caso el Estado haya hecho las gestiones correspondientes en aras de que Rodríguez Santana cumpliese la pena de restitución, según los términos antes citados del Código Penal. Sin embargo, el Estado pretende que la Sucesión de Rodríguez Santana cumpla con la pena de restitución que se le impuso a su causante. Según se desprende de la anterior discusión, dicho reclamo no encuentra base alguna en nuestro ordenamiento jurídico.

Por los fundamentos antes esbozados, la pena de restitución que se le impuso a Rodríguez Santana se extinguió con el fallecimiento del penado. En mérito de lo antes expresado, se confirma la sentencia dictada por el Tribunal de Apelaciones.

Se dictará sentencia de conformidad.

BALTASAR CORRADA DEL RÍO
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Estado Libre Asociado de
Puerto Rico

     Peticionario

       v.

     Certiorari

Juan M. Rodríguez Santana
C/P Higgins y Otros

     Recurrido

CC-2003-956


SENTENCIA


San Juan, Puerto Rico, a 24 de febrero de 2005.

Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, resolvemos que la pena de restitución que se le impuso a Juan M. Rodríguez Santana se extinguió con el fallecimiento del penado. En mérito de lo antes expresado, se confirma la sentencia dictada por el Tribunal de Apelaciones.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre con el resultado sin opinión escrita.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo