EL PUEBLO DE PUERTO RICO, denunciante y apelado, *v.* FRANCISCO RIVERA FLORES, acusado y apelante

*Número:* Cr-62-239    *Resuelto:* 12 de febrero de 1963

*Héctor Martínez Colón,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Juan A. Faría, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

El acusado Francisco Rivera Flores, un diabético desde hace siete años, declaró haber salido de su trabajo a las cuatro de la tarde conduciendo un vehículo de motor de los conocidos como *jeep;* que se detuvo en un cafetín de la calle Reina y entre esa hora y las seis de la tarde se tomó unas cuantas cervezas grandes. Cuando se retiró del cafetín por sentirse un poco mal, al llegar al jeep le dio "una cosa tan fuerte que me quedé así encima del guía". La prueba no establece si este repentino malestar fue producido por una intoxicación alcohólica o por un colapso diabético.

El Teniente de la Policía Teodoro Rovira declaró que esa tarde, él iba por la calle Capitán Correa esquina Reina y unas personas que habían allí lo llamaron. El Teniente vio un jeep estacionado. Cuando se desmontó del automóvil en el cual viajaba, se acercó al acusado quien estaba manipulando el jeep; que el acusado estaba dentro del jeep, "montado en el carro, se tambaleaba en el jeep, tenía la vista rojiza y cuando habló conmigo despedía un fuerte olor a licor por la boca" (t. 11) ; que en el momento que llegó el Teniente Rovira y estacionó su automóvil detrás del vehículo en que estaba sentado el acusado, como a dos pasos del mismo, el vehículo del acusado se fue hacia atrás y le tocó el *bumper* (parachoques) al automóvil del Teniente Rovira, "lo tocó nada más" (t. 15). El señor Juez inquirió si el carro se había ido hacia atrás o si el acusado había dado un cambio en retroceso y el Teniente Rovira reafirmó que el carro se había ido hacia atrás. El Teniente Rovira había declarado antes que el motor del vehículo del acusado estaba funcionando, porque "en el momento que yo llegué al sitio y me estacionaba detrás del vehículo que él conducía, en esos momentos antes él había puesto a funcionar el motor" (t. 12). De manera que la prueba del caso, reducida a su contenido jurídico preciso, demuestra que el acto de "conducir" del

vehículo, si lo hubo, consistió en irse hacia atrás dos pasos y el acto de "hacer funcionar" el vehículo consistió en poner a funcionar el motor.

Esclarecer el hecho delictivo es importante, porque habiendo sido el apelante denunciado por *conducir* un vehículo de motor por un camino público mientras se encontraba bajo los efectos de bebidas embriagantes, el único error señalado por el apelante es habérsele condenado "cuando no se probó y así llegó a la conclusión el Tribunal de que el acusado apelante *guiaba* algún vehículo de motor bajo los efectos de bebidas embriagantes". El razonamiento de la ilustrada Sala sentenciadora aparece en dos distintas exposiciones—una, al dictar sentencia y otra al declarar sin lugar una moción de reconsideración.

En la primera, el ilustrado Juez sentenciador se expresó así: "La sección 5801 de la Ley de Vehículos y Tránsito establece que será ilegal que cualquier persona bajo los efectos de bebidas embriagantes conduzca o haga funcionar (son dos cosas que dice), cualquier vehículo de motor. Ese es el delito. Conducir o hacer funcionar cualquier vehículo de motor bajo los efectos de bebidas embriagantes.

"No es delito estar bajo los efectos de bebidas embriagantes en cuanto a la Ley de Tránsito. El delito es estar bajo los efectos de bebidas embriagantes y conducir o hacer funcionar un vehículo de motor.

"Hacer funcionar un vehículo de motor entiende este Tribunal que es [*sic*] prender el motor, manipular el vehículo en tal forma que sea parte del funcionamiento del mismo. Conducirlo quiere decir llevar ese vehículo por un camino o por una calle, es lo que llamamos comúnmente guiar el vehículo.

"Ahora, uno puede hacer funcionar un vehículo estando estacionado y no estarlo guiando. Por eso es que la ley le pone las dos alternativas . . ."

En la segunda, el ilustrado Juez se expresó así: "El Tribunal va a declarar sin lugar la moción solicitando recon-

sideración, por el fundamento de que el Tribunal entiende que no existen dos delitos distintos. No es necesario presentar elementos de prueba distintos . . . Se trata de dos infracciones a las disposiciones de la Ley de Vehículos y Tránsito que conllevan la misma prueba . . ."

■ De acuerdo con Wharton se trata de dos delitos distintos: "En casos que surjan bajo estatutos que prohiban el conducir (*driving*) un vehículo de motor a una persona intoxicada o bajo los efectos (*influence*) de bebidas embriagantes, el término conducir (*driving*) ha sido interpretado como uno que exige que el vehículo se encuentre sobre la marcha (*in motion*) para que el delito sea cometido. El mero arranque del motor o el intento de ponerlo a funcionar (*start*) no implica conducir (*driving*) dentro de los términos de un estatuto que lo prohibe como delito por conducir mientras se esté intoxicado, a menos que el estatuto haga del intento para conducir un equivalente al conducir.

"La marcha del vehículo por una persona intoxicada no tiene que extenderse mucho para que pueda interpretarse como una conducción (*driving*) del vehículo y se ha sostenido que el solo hecho de mover la persona intoxicada un automóvil por unos cuantos pies (*few feet*), constituye una violación del estatuto que prohibe conducir en estado de embriaguez . . .

"Aunque los estatutos que prohiben el conducir mientras se esté intoxicado y aquéllos que prohiben el hacer funcionar (*operating*) un vehículo de motor mientras se esté intoxicado existen para el mismo propósito, o sea, proteger a los que usan los caminos públicos contra el peligro de vehículos en manos de personas bajo los efectos de bebidas embriagantes, se ha reconocido por algunos tribunales una distinción entre ambos términos. El hacer funcionar (*operating*) se ha interpretado como que incluye otros actos no comprendidos dentro del término conducir (*driving*). El mero arrancar (*start*) de un automóvil, se ha sostenido, constituye el hacer funcionar (*operation*) de dicho automóvil dentro del signi-

ficado de un estatuto que prohibe hacer funcionar un vehículo de motor por una persona bajo los efectos de intoxicantes.

■ "Algunos tribunales han sostenido que cualquier manipulación del mecanismo o sistema eléctrico de un vehículo de motor, que por sí sola o formando parte de cierta secuencia, ponga en movimiento la fuerza motriz del vehículo, es el "hacer funcionar el vehículo" (*operation of the vehicle*) dentro del significado del estatuto prohibiendo hacer funcionar un vehículo de motor por una persona intoxicada, por lo menos, si hay la intención de mover el automóvil.

"El más mínimo funcionamiento del motor por una persona intoxicada constituye una violación del estatuto. Así, cuando el acusado, mientras estaba intoxicado, solamente hace funcionar el motor en un esfuerzo por sacarlo de una zanja, mientras el que lo conducía estaba fuera del automóvil tratando de empujarlo, fue hallado culpable de hacer funcionar un automóvil mientras estaba en estado de embriaguez en violación del estatuto. Una condena por hacer funcionar (*operating*) también fue sostenida cuando el acusado solamente trataba de librar el automóvil de un lote de madera en el cual estaba atascado; guiar un automóvil mientras el mismo se estaba remolcando hacia el sitio donde sería reparado, se sostuvo constituía el hacer funcionar (*operating*) dentro del significado del estatuto.

"Como en los casos que han surgido bajo estatutos que prohiben conducir (*driving*) un vehículo de motor por una persona bajo la influencia de bebidas embriagantes, algunos de los casos que han surgido bajo estatutos que prohiben el hacer funcionar un vehículo de motor por una persona intoxicada, deciden que para constituir el delito de hacer funcionar (*operating*) un vehículo dentro del significado de tal estatuto, es necesario que el vehículo esté en movimiento. Claro es que no puede decirse que una persona esté haciendo funcionar o conduciendo un automóvil, si solamente está sentado en el vehículo y el mismo no está en movimiento . . ."

3 Wharton's *Criminal Law and Procedure* 166–168 Seccio-

nes 993–994 (edición The Lawyers Co-Operative Publishing Company (1957)).

Hay en la acusación, la teoría aplicable a este caso y la prueba presentada, ciertas circunstancias que nos obligan a considerarlo como un caso especial. La Sec. 5–801 de la Ley Núm. 141 de 20 de julio de 1960 dispone: (a) "Será ilegal que cualquier persona bajo los efectos de bebidas embriagantes *conduzca* o *haga funcionar* cualquier vehículo de motor . . ." (Subrayado nuestro.) La acusación presentada contra el apelante dice así: "Porque el referido acusado . . . de manera ilegal, voluntaria, maliciosa y criminalmente conducía el vehículo de motor . . . por un camino público mientras se encontraba bajo los efectos de bebidas embriagantes . . ."

La regla parece ser que cuando un estatuto prescribe como delictivas dos o más actuaciones o transacciones que resultan separadas y distintas, enumerándola en la disyuntiva (*disjunctively*)—o sea, estableciendo una alternativa mediante el término de relación disyuntiva *o*, que obliga a optar por una de ellas—se puede presentar una acusación por todas conjuntamente (*conjunctively*) y el acusado puede ser declarado culpable por cualquiera de ellas. Véase, por ejemplo, *Pueblo* v. *Adorno*, 81 D.P.R. 518 (Pérez Pimentel) (1959) cita precisa a las págs. 533–534 (4). Pero, siempre se considera una incongruencia fatal acusar disyuntivamente, siguiendo las propias palabras del estatuto, si la disyuntiva en la exposición (*averment*) de los hechos en que se funda la acusación, produce incertidumbre en cuanto a cuál de las dos alternativas es la que se intenta seguir—4 Wharton, obra y edición citadas (30–631, Sec. 1798—o si el delito puede cometerse en una u otra forma, y de la forma en que se cometa depende la inferencia de la intención criminal: *Pueblo* v. *Rosado*, 76 D.P.R. 387 (Per Curiam) (1954), cita precisa a la pág. 388. Esto concuerda, hasta cierto extremo, con el Art. 77 de nuestro Código de Enjuiciamiento Criminal, 34 L.P.R.A. 52–53, sec. 132—que dispone: *"Dos o*

*más delitos* pueden ser imputados en la misma acusación o denuncia, cada uno de ellos en un cargo separado, si dichos delitos son de igual o similar naturaleza, o han surgido del mismo acto o transacción o de dos o más actos o transacciones relacionadas entre sí o que constituyan partes de un plan común . . ."

La historia legislativa de la Sec. 5–801 demuestra que primero se empleó la palabra "conducir" como el único acto punible; posteriormente se pensó en una enmienda por inclusión de las palabras "o tenga físicamente bajo su control cualquier vehículo" y por último se decidió sustituir las palabras anteriores por "hacer funcionar": 13–III Diario de Sesiones 1409 y 13–V obra citada 2276. Siendo esto así, el término "conduzca" y el término "haga funcionar" incluidos como tales en la última redacción de estilo de la sección 5–801, significan dos actuaciones distintas en la alternativa de acuerdo con la cita de Wharton—*State* v. *Williams*, 185 S.E. 661 (Schenck) (1936), cita precisa a a pág. 562—o dos delitos surgidos de una misma transacción según el Art. 77 de nuestro Código de Enjuiciamiento Criminal. En el supuesto que se tratara de distintas modalidades de un mismo delito, todavía la disyuntiva implícita en ambas modalidades, según las propias palabras del estatuto, crearía confusión por no existir una diferenciación léxico-lógica capaz de independizar una actuación de la otra dentro del claroscuro semántico, y de acuerdo con la regla expuesta por Wharton resultaría objetable. Véase: *State* v. *Helms*, 102 S.E.2d 241 (Bobbitt) (1958) cita precisa a las págs. 242–243. Habiéndose acusado al apelante de uno solo de los delitos o de las modalidades del delito es indudable que el apelante nada hubiera adelantado en solicitar especificación de particulares.

Siendo esto así, debemos considerar el término "conduzca" como el delito o modalidad distinta y separada del delito que comprende el acto de mover el vehículo de un sitio a otro y el término "haga funcionar" como el delito o modalidad distinta y separada del delito que comprende el acto

336

de manipular dentro del mismo sitio un vehículo de motor: *State* v. *Sweeney*, 31 L. W. 2363 (1–29–63). La forma de presentar la acusación sería precisar en cuál de las dos modalidades del delito es que descansará la prueba de acusación.

▪ Considerada ahora la prueba, la misma no resulta satisfactoria bajo ninguno de los dos delitos o modalidades del delito, a menos que estuviéramos dispuestos a consagrar en nuestra jurisprudencia el criterio extremo que el movimiento de dos pasos hacia atrás de un automóvil sin cambio de retroceso, constituye el delito de "conducir". En cuanto a la modalidad del hacer funcionar, la prueba es un tanto inconsistente. El Teniente de la Policía Rovira declaró que vio el *jeep* del apelante estacionado y fue al momento de él acercarse que el acusado (*sic*) prendió el motor. La descripción del estado lastimoso en que se encontraba el acusado descarta toda posibilidad de que éste pudiera coordinar algún movimiento con la rapidez o la intención de fugarse que sugiere su testimonio. Por el contrario, robustece la versión del acusado que al sentirse mal lo que hizo fue reclinarse sobre la rueda de guiar de su vehículo, hecho que realizó mucho antes de acercarse al vehículo el Teniente Rovira.

*Debe revocarse la sentencia apelada.*