EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAFAEL QUILES MORGADO, acusado y apelante.

*Número:* CR–62–151  *Resuelto:* 27 de febrero de 1963

*Luis A. Archilla Laugier,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Nilita Vientós Gastón, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

PER CURIAM: El fiscal formuló acusación contra Rafael Quiles Morgado imputándole una infracción a la Sec. 5–801 de la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 141 de 20 de julio de 1960, 9 L.P.R.A. sec. 1041 (Supl. 1961, pág. 284), consistente en que "en ocasión en que manejaba [un] vehículo de motor . . . lo hacía en completo estado de embriaguez alcohólica, lo que no le permitía el pleno dominio y control del vehículo." Fué convicto y sentenciado a cumplir 10 días de cárcel. Se le suspendió además la licencia para conducir por un período de un año.

Apunta que el tribunal de instancia incidió en varios errores que pueden resumirse en dos planteamientos básicos: 1) al desestimar la excepción perentoria a la acusación; y, 2) al no ordenar la absolución del acusado en vista de las desviaciones observadas en el procedimiento para la remisión de la muestra de sangre que le fuera tomada. No le asiste la razón.

■ 1) La acusación sigue sustancialmente las palabras del estatuto que definen el delito: "Será ilegal que cualquier persona bajo los efectos de bebidas embriagantes conduzca o haga funcionar cualquier vehículo de motor." Es suficiente. Cfr. *Pueblo* v. *Rivera Flores,* 87 D.P.R. 328 (1963).

■ 2) El segundo apuntamiento se basa en que la doctora que tomó la muestra no "llenó" íntegramente el parte de remisión enviado al laboratorio del Departamento de Salud. Así fue en efecto, pero la declaración de la doctora Orea Vela estableció que el parte fue llenado por la supervisora Haynes en presencia de la testigo, quien comprobó "que todo lo que había dicho el paciente estuviera correcto", y luego lo firmó.

Esto es precisamente todo cuanto se requiere por la disposición reglamentaria sobre análisis químicos, Art. 3 del Reglamento Núm. 30 aprobado por el Secretario de Salud en 29 de septiembre de 1960, 9 R.&R.P.R. sec. 1043-3, que indica que "cada muestra de sangre u orina irá acompañada de un parte de remisión que suplirá el Departamento de Salud y que será *cumplimentado* en cuadruplicado y *firmado* por la persona que tome la muestra, cuidándose de que cada copia contenga exactamente la misma información." *Cumplimentar*, según el Diccionario de la Lengua Española, 18a. ed. (1956), pág. 402, es "poner en ejecución los despachos u órdenes superiores." Nada hay en el texto transcrito que requiera que el parte se escriba o llene por la persona que toma la muestra, función que compete más bien a un empleado de oficina que a un técnico. La garantía de autenticidad la suple la firma de la persona que toma la muestra, previa comprobación de que la información que contiene el parte es la correcta o la que se ha ofrecido a los fines de identificarla.(¹) Igualmente se probó satisfactoriamente, mediante la identificación de la rotulación con el número correspondiente, que la muestra que se tomó fué la que se recibió en el Departamento de Salud, se examinó por la química Fernández, y que arrojó un resultado de 0.24 gramos de alcohol en cien gramos de sangre. Huelga decir que meras desviaciones en el procedimiento de tomar y analizar las muestras no justifican que se descarte en el proceso criminal este método provisto por el legislador para ayudar efectivamente en la persecución de los infractores de la ley, siempre

---

(¹) El parte de remisión requiere, entre otras cosas, que se consigne el nombre de la persona a quien se toma la muestra, su edad, vecindad, ocupación y el número de su licencia para conducir vehículos de motor; el nombre, dirección y cargo público que ocupa la persona que ordena la muestra; la identificación y dirección de la institución en que se toma la muestra, así como la fecha indicando la hora exacta en que ello se hace; *el número de serie en los frascos para las muestras;* el nombre, dirección y cargo público de la persona que la toma y el nombre y direcciones de los testigos que presencian el acto.

494

que el juzgador quede satisfecho de la autenticidad de la muestra tomada y de la identidad de la analizada.

■ Además, independientemente del resultado del análisis, el testimonio del policía que gestionó la toma de la muestra estableció en forma incontrovertida que el apelante daba muestras de encontrarse en estado de embriaguez —apenas podía sostenerse en pie (T.E., págs. 4 y 5), no tenía control de sus reflejos musculares (id. pág. 5), su aliento despedía un fuerte olor a licor (id. pág. 6) ; hablaba en forma entrecortada (id. pág. 6). Ratificamos lo dicho en *Pueblo* v. *Tribunal Superior*, 84 D.P.R. 392 (1962) y *Pueblo* v. *Cabrera Osorio*, 84 D.P.R. 97 (1961), al efecto de que el fiscal puede establecer el delito sin necesidad de presentar prueba sobre el resultado del examen.

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de Bayamón, en 16 de noviembre de 1961.*

