EL PUEBLO DE PUERTO RICO, peticionario, *v.* ANICETO SIERRA RODRÍGUEZ, acusado.

*Número:* CE-94-400          *Resuelto:* 8 de febrero de 1995

*Carlos Lugo Fiol, Subprocurador General,* y *Grisel Hernández Esteves, Procuradora General Auxiliar,* abogados de El Pueblo; *Luis A. Pérez Bonilla,* de la *Sociedad para la Asistencia Legal,* abogado del acusado.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

El presente caso nos permite interpretar la extensión de la palabra "obra" según ésta es utilizada dentro del contexto del Art. 188A del Código Penal, 33 L.P.R.A. sec. 4306a.

## I

*Hechos*

El Sr. Aniceto Sierra Rodríguez fue acusado de dos (2) cargos por infracción al Art. 188A del Código Penal, *supra.* En las acusaciones se expresó que el acusado fue contratado para la construcción de unos gabinetes de cocina; que se le entregaron dos (2) cheques por las cantidades de dos

mil dólares ($2,000) y mil quinientos dólares ($1,500) para que comenzara la obra, y que éste no realizó los trabajos requeridos. La defensa presentó una moción, al amparo de la Regla 64(p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, alegando la ausencia total de prueba en la determinación de causa probable. Planteó que el Art. 188A, *supra*, tipifica el fraude en obras de construcción, mientras que a lo que el acusado se comprometió fue a fabricar unos gabinetes. El tribunal de instancia acogió dicho planteamiento y declaró con lugar la desestimación. Entendió que el Art. 188A, *supra*, se "refiere a obras de construcción, como edificios, residencias, ampliaciones, etc.".

Inconforme, el Procurador General acudío ante nos, mediante un recurso de *certiorari*, en el cual alegó que el tribunal de instancia erró al desestimar las acusaciones.

Así las cosas, le concedimos un término al acusado para que mostrara causa por la cual no deberíamos expedir el auto solicitado y revocar la determinación del foro de instancia que concedió la moción al amparo de la Regla 64(p) de Procedimiento Criminal, *supra*.

El acusado ha comparecido. Su escrito no nos convence. Resolvemos según lo intimado.

## II

*La interpretación de una ley penal*

Para aplicar una ley a los hechos de un caso en particular siempre resulta necesario interpretarla, ya que no existe ley alguna que no requiera ser interpretada al momento de su aplicación. D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, Hato Rey, Instituto para el Desarrollo del Derecho, 1983, págs. 92–93. Como señala Jiménez de Asúa, todas las leyes, aun las clarísimas, requieren algún grado de interpretación. *Pueblo v. Tribunal Superior*, 81 D.P.R. 763, 788 (1960).

■ El Art. 6 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3021, enuncia la regla de interpretación de las palabras y frases que será utilizada con relación a un estatuto penal. Éste señala, en lo pertinente:

Las palabras y frases se interpretarán según el contexto y el significado sancionado por el uso común y corriente.

■ Esta disposición contiene los dos (2) criterios que serán aplicados en la interpretación judicial de los estatutos penales: la interpretación gramatical y la interpretación declarativa. Nevares-Muñiz, *op. cit.*, pág. 106. La interpretación gramatical se refiere a que el juez habrá de examinar el significado gramatical de las palabras y la sintaxis de las oraciones en la ley. Si de este análisis surge una interpretación clara y aceptable, concluye la interpretación. D. Nevares-Muñiz, *Código Penal de Puerto Rico*, Hato Rey, Instituto para el Desarrollo del Derecho, 1993, pág. 9. Ahora bien, las palabras en un estatuto pueden tener un significado técnico o común. Cuando se trata de términos técnicos, éstos se deben interpretar dentro del contexto en que aparecen en la ley, a menos que el legislador haya establecido una definición en particular. De otra parte, si se trata de vocablos extrajurídicos que pertenecen al lenguaje común, entonces se les dará el significado que le concede el uso corriente. Nevares-Muñiz, *Derecho Penal Puertorriqueño, Parte General, op. cit.*, pág. 95.

■ La interpretación declarativa, por su parte, es la que se hace en términos del resultado. Ésta es la interpretación en la cual el juez aplica la ley estableciendo una correspondencia exacta entre las palabras y el espíritu de la ley. Esta interpretación declarativa, a su vez, puede ser restrictiva o extensiva. Nevares-Muñiz, *Derecho Penal Puertorriqueño, Parte General, op. cit.* La restrictiva consiste en limitarse a entender las palabras en su sentido por considerar que éstas son la única expresión de la voluntad del legislador. La extensiva ocurre cuando la letra de la ley

no expresa claramente el contenido de la voluntad legislativa y, por lo tanto, se hace necesario interpretar la ley para determinar cuál es dicha voluntad. Para hacerlo, los informes que acompañaron al proyecto de ley y su historial legislativo resultan ser de gran utilidad. Íd.

■ Debemos aclarar, sin embargo, que la interpretación extensiva no es lo mismo que la interpretación analógica. Esta última, por razón del principio de legalidad, no es permitida cuando se trata de estatutos penales. Sobre este particular nos señala Jiménez de Asúa:

> " 'La analogía lleva siempre a una extensión de la ley, pero ella se distingue de la interpretación [extensiva] ..., porque en ésta, aunque el intérprete se sirva de elementos sistemáticos, el caso está previsto por los legisladores, incluso con palabras inadecuadas, mientras que en la aplicación analógica no ha sido contemplada aquella hipótesis por la ley. Por eso no debe hablarse de interpretación analógica o mejor dicho [la interpretación extensiva] es cosa distinta de la analogía porque la interpretación es el descubrimiento de la voluntad de la ley en sus propios textos, en tanto que con la analogía no se interpreta una disposición legal que en absoluto falta sino por el contrario, se aplica al caso concreto una regla que disciplina un caso semejante. En la interpretación extensiva falta la interpretación literal, pero no la voluntad de la ley, y en la analogía falta también la voluntad de ésta." Citado en Nevares-Muñiz, *Derecho Penal Puertorriqueño, Parte General*, op. cit., pág. 96.

■ Como parte de la interpretación extensiva, está el principio de que los estatutos penales deben ser interpretados restrictivamente en cuanto a lo que desfavorezca al acusado, y liberalmente en cuanto a lo que le favorezca. *Pueblo v. Arandes de Celis*, 120 D.P.R. 530, 538 (1988); *Mari Bras v. Alcaide*, 100 D .P.R. 506, 516 (1972). Sin embargo, esta regla de que los estatutos penales deben interpretarse restrictivamente no exige que a las palabras de la ley deba dárseles un significado más limitado que el que usualmente tienen dentro de la realidad social o que deba hacerse caso omiso de la evidente intención del legislador. *Pacheco v. Vargas, Alcaide*, 120 D.P.R. 404, 410 (1988);

*Pueblo v. Hernández Colón,* 118 D.P.R. 891, 903 (1987); *Pueblo v. Montilla,* 71 D.P.R. 36, 44 (1950).

■ Procedemos a aplicar estas normas a los hechos de este caso.

## III

*La palabra obra dentro del contexto del Art. 188-A del Codigo Penal*

El Art. 188A del Código Penal, *supra,* dispone:

Todo empresario, ingeniero, contratista o arquitecto de obras, y *todo aquel que fuere contratado o se comprometiere a ejecutar una obra* y que, luego de recibir dinero como pago parcial o total *para ejecutar el trabajo contratado,* con la intención de defraudar incumpliere o contraviniere la obligación de *ejecutar o completar la obra* según pactada, será sancionado con pena de reclusión que no excederá de seis (6) meses o multa que no excederá de quinientos (500) dólares o ambas penas a discreción del Tribunal, si el valor de la obra pactada y no ejecutada fuere menor de doscientos (200) dólares.

Si el valor de la obra pactada y no ejecutada fuere de doscientos (200) dólares o más será sancionado con pena de reclusión por un término fijo de dos (2) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de tres (3) años; de mediar circunstancias atenuantes podrá ser reducida hasta un mínimo de un (1) año.

En el caso de las personas jurídicas, cuando el valor llegare o excediere de doscientos (200) dólares, el tribunal impondrá una multa no menor de cinco mil (5,000) dólares. Además impondrá la pena de suspensión.

En todos los casos, independientemente del importe del dinero recibido como pago parcial o total para ejecutar el trabajo contratado, el tribunal ordenará además que la persona convicta resarza a la parte perjudicada por el doble del importe del dinero recibido como pago parcial o total para ejecutar el trabajo contratado. (Énfasis suplido.)

■ Surge de lo anterior que para que a una persona se le pueda imputar la comisión de este delito tienen que estar presentes los elementos siguientes: (1) una defi-

nición de cuál era la obra y los términos y las condiciones pactados para ejecutarla; (2) la persona contratada debe haber recibido dinero como pago total o parcial para ejecutar la obra; (3) el incumplimiento por parte de dicha persona con los términos y las condiciones pactados para ejecutar la obra, y (4) la intención o el propósito específico de la persona de defraudar a aquellas con quienes se obligó. Como vemos, éste es un delito de intención específica. Además de la intención general del Art. 15 del Código Penal, 33 L.P.R.A. sec. 3062, para que se configure este delito se requiere que el imputado haya actuado con la intención específica de defraudar.

En el caso de autos, el tribunal de instancia entendió que la prueba con la cual se determinó causa probable fue insuficiente. A su entender, había una ausencia total de prueba. Según dicho foro, el Art. 188-A, *supra*, se refiere únicamente a obras de construcción, y la prueba aportada para la determinación de causa probable versó únicamente sobre la fabricación de unos gabinetes de cocina. No le asiste la razón. Veamos.

■■ Tanto bajo la interpretación gramatical como bajo la declarativa, encontramos que el vocablo "obra" del Art. 188-A, *supra*, incluye la construcción de unos gabinetes. Un análisis de la palabra "obra" en distintos diccionarios demuestra que éste es un concepto general que puede incluir un sinfín de posibles trabajos.[1] *Pueblo v. Arandes de Celis*, supra, pág. 539.

---

[1] La palabra "obra" según el *Diccionario de la Lengua Española*, 21ra ed., Madrid, Ed. Espasa-Calpe, 1992, pág. 1035, significa, entre otras cosas: cosa hecha o producida por un agente; cualquier producción del entendimiento en ciencias, letras o artes; volumen o volúmenes que contienen un trabajo literario completo; edificio en

En segundo lugar, hemos expresado que los estatutos penales deben interpretarse a la luz de la realidad social de donde surgen y operan. *Pacheco v. Vargas, Alcaide*, supra. Si a esto le añadimos que en Puerto Rico, una obra es algo más que una construcción de edificios, residencias o ampliaciones de éstos, tenemos que concluir que dicho vocablo incluye diversos tipos de trabajos realizados por el hombre, no sólo obras de construcción o ampliación de edificios o residencias.

Pasemos ahora a analizar el historial legislativo del Art. 188A, *supra*. Este artículo fue añadido a nuestro Código Penal mediante la Ley Núm. 63 de 5 de julio de 1988 (33 L.P.R.A. sec. 4306a). En su Exposición de Motivos se expresó lo siguiente:

> Como es de conocimiento general, en Puerto Rico se registran casos de personas inescrupulosas que celebran contratos, muchas veces orales, *para construir obras o reconstruir estructuras* y, luego de recibir el dinero para ejecutarlas, desaparecen o las abandonan sin realizarlas o completarlas de acuerdo a los términos pactados con los clientes.
>
> Aun cuando los perjudicados pueden instar una acción civil por incumplimiento de contrato o iniciar aquellas acciones que le proveen otras leyes especiales, estos remedios resultan lentos o costosos.

---

construcción; lugar donde se está construyendo algo o arreglando el pavimento; medio virtud o poder, trabajo que cuesta, o tiempo que requiere la ejecución de una cosa; labor que tiene que hacer un artesano; acción moral, y principalmente la que se encamina al provecho del alma, o la que le hace daño.

El *Diccionario Español Actual*, Barcelona, Ed. Grijalbo, 1988, pág. 670, define "obra" como: todo aquello creado por alguien, individual o genéricamente; cualquier manifestación artística como un libro, cuadro, partidura musical, película, etc.; conjunto de cosas que un autor ha creado; pieza teatral; trabajo que realiza un artesano; lugar donde se trabaja en la construcción de un edificio, presa, etc.; labor de albañilería; esfuerzo empleado en hacer o conseguir algo.

El *Diccionario Español de Sinónimos y Antónimos*, Madrid, Ed. Aguilar, 1985, pág. 777, incluye como sinónimos de "obra": trabajo, labor, faena, tarea, ocupación, hazaña, producción, producto, resultado.

El *Diccionario y Gramática de la Lengua Española*, Barcelona, Ed. Nauta, 1985, T. 2, pág. 495, define "obra" como: cosa hecha o producida por un agente; cualquier producción del entendimiento; edificio en construcción; medio, mitad o poder; labor que tiene que hacer un artesano; volumen o volúmenes que contienen un trabajo completo; acción moral, especialmente la encaminada al provecho o daño del alma.

A fin de evitar y desalentar esta clase de conducta y de proveer un mecanismo más ágil y efectivo, para sancionar esta práctica, es necesario e imperioso tipificar y penalizar como delito los actos de los contratistas, empresarios, ingenieros y arquitectos de obras que después de recibir el dinero para la ejecución de una obra no usan el dinero para ese propósito y no realizan ni completan el trabajo contratado.

Debido a la gravedad de la situación la persona que incurra en esta actuación será sancionada del mismo modo que los Artículos 165 y 166 del Código Penal del Estado Libre Asociado de Puerto Rico que penalizan a las personas convictas por apropiación ilegal y por apropiación ilegal agravada. A estos efectos se gradúa la pena a tenor con el importe del dinero recibido como pago total o parcial para *ejecutar el trabajo contratado.*

Además se dispone que en todos los casos el tribunal ordenará a la persona convicta del delito a resarcir a la parte perjudicada por el doble del importe del dinero recibido. Ello no afecta la responsabilidad civil de las personas que incurran en la comisión del delito. (Énfasis suplido.) 1988 Leyes de Puerto Rico 306.

De la discusión de la medida, efectuada en el Senado de Puerto Rico el 21 de abril de 1988, surge con meridiana claridad la intención de otorgarle al término "obra" un significado amplio. Diario de Sesiones de la Asamblea Legislativa, Senado, de 21 de abril de 1988, pág. 1155. A preguntas de la Senadora Sra. Victoria Muñoz Mendoza, sobre la pena que ha de imponerse, y ante las dudas de si el delito sería efectivo para lograr el objetivo de desalentar la conducta tipificada, el Senador Sr. Rolando Silva respondió:

SR. SILVA: ... Sin embargo, este proyecto tiene una justificación, y una justificación social y la compañera aunque sí, existe el procedimiento civil, del mecanismo civil para resarcir a estas personas, la realidad del asunto es que la cantidad envuelta que [sic] siempre es tan poca que se queda [sic] con la suya y hay una conducta consuetudinaria que las personas se dedican

a esto a cogerle depósitos a las viejitas *para hacerle una obra ya sea arreglarle un techo o una marquesina, una reja* y luego, no lo cumplen y sabiendo que le es más costoso el reclamo que, [sic] y el problema y el trabajo y la, [sic] y todo lo que conlleva ese reclamo en la corte, en el Tribunal Superior Civil que lo que vale el reembolso en realidad. (Énfasis suplido.) Diario de Sesiones, *supra*, pág. 1156.

Se desprende del debate que los legisladores eran plenamente conscientes de la frecuencia con que ocurría este tipo de fraude y de los variados tipos de conducta comprendidos dentro de esta indeseable práctica. También demostraron una preocupación por la magnitud de las penas impuestas:

SR. RAMOS, ORESTE: ... Ahora, hay otra preocupación que tengo y es con relación a este asunto de las penas. No hay, Su Señoría, jurado en Puerto Rico y aquí se va a tratar de juicios por jurados porque se está hablando de dos años de cárceles [sic], nada de doscientos (200) dólares, no hay jurado en Puerto Rico que meta preso por 2 años a un "chivero" por no completar una obra. Y yo creo que esa redacción derrota el propósito de los autores de la medida. Diario de Sesiones, *supra*, pág. 1158.

El Senador Sr. Jorge Izquierdo Stella apoyó la medida y se unió a la preocupación de que si la penalidad era muy fuerte se podría convertir en una ley sin aplicación efectiva. El Senador Sr. Miguel Miranda Conde respondió:

SR. MIRANDA CONDE: Señor Presidente, yo viví ese drama ya hace unos cuantos años atrás. Hay algo que estamos pasando por alto cuando estamos hablando de esta medida. Y es el hecho factual [sic], de que en Puerto Rico el mercado más grande no es de construir casas. El mercado más grande que hay aquí en Puerto Rico es de las mejoras de casas, y todas son residenciales. Y usualmente son de una sola planta. Usualmente son terreras y usualmente son en lugares de clase media baja, clase baja y clase media.

Yo aprecio las delicadezas en cuanto a que si el castigo es inusitado, que si es cruel, que si el Jurado le va a coger pena, todo eso yo lo aprecio y lo respeto y lo admiro como parte de un proceso legislativo. Pero aquí estamos obligados a pensar no solamente en las protecciones individuales constitucionales y en los sistemas procesales, criminales y todas esas cosas, sino

> pensar también (sic) la ciudadanía, que es donde estos "chiveros" hacen sus mayores estragos. Diario de Sesiones, *supra*, pág. 1159.

Si bien es cierto que varios legisladores enfocaron el problema como de fraude en la construcción de estructuras, no es menos cierto que éstos no expresaron la intención de que en el estatuto se limitase el alcance de la palabra "obra".

Es de notar que en el debate incluso se mencionaron otras obras tales como arreglo de techos e instalación de rejas. También resulta revelador que en varias ocasiones durante la discusión de los senadores, éstos se refirieron al sujeto del delito como "chivero". Como es de conocimiento general, en nuestro país "chivero" o "chiripero" es, entre otras cosas, una persona que se contrata para realizar arreglos o encomiendas de diversa naturaleza. De todo lo anterior se puede colegir que la interpretación del tribunal de instancia no está acorde con un significado común de esta palabra ni con el contexto social en que ésta se aplica.

██ La intención del legislador al aprobar el citado Art. 188A resulta clara: penalizar y desalentar la práctica de aquellas personas que, con la intención de defraudar, toman dinero, como pago parcial o total, para realizar una obra y luego no la ejecutan o no la completan. Además, provee un medio rápido para que los perjudicados sean resarcidos del perjuicio que tal fraude les causó. Si el legislador no limitó la aplicación de la ley, no hay por qué coartar innecesariamente sus propósitos.

Por todo lo antes expuesto, *se expide el auto de "certiorari" y se dictará sentencia para revocar la resolución recurrida.*

El Juez Asociado Señor Fuster Berlingeri emitió una opinión de conformidad.

— O —

Opinión de conformidad del Juez Asociado Señor Fuster Berlingeri.

El precepto de que los estatutos penales deben ser interpretados de forma restrictiva en cuanto a lo que desfavorezca al acusado no es un mero canon de hermenéutica. Se trata más bien de una importante regla de naturaleza normativa, que debe acatarse con rigurosa fidelidad, porque se origina en el más fundamental principio del derecho penal y se apoya en mandatos constitucionales de la mayor jerarquía.

El precepto aludido surge en esencia del principio de la legalidad, sobre el cual se erige nuestro ordenamiento jurídico penal. Art. 8 del Código Penal, 33 L.P.R.A. sec. 3031. La interpretación restrictiva del alcance de los estatutos penales es un corolario del axioma básico contenido de la antigua máxima *nulla poena sine lege. Meléndez v. Tribunal Superior*, 90 D.P.R. 656 (1964). Es también un corolario del mandato constitucional sobre el debido proceso de ley en el ámbito penal, conforme al cual no se puede hacer responsable criminalmente a ninguna persona por una conducta que no podía entender razonablemente que estuviese proscrita. *Pueblo v. Tribunal Superior*, 81 D.P.R. 763 (1960). Por estas razones, el precepto en cuestión debe tomarse muy en serio por todos los foros judiciales.

Ahora bien, la norma de interpretación restrictiva aplica sólo cuando existan dudas genuinas sobre el alcance o sentido de una disposición penal. *Pueblo v. Tribunal Superior*, 101 D.P.R. 439 (1973); *Mari Bras v. Alcaide*, 100 D.P.R. 506 (1972); *El Pueblo v. Benítez et al.*, 19 D.P.R. 246 (1913). Dicha norma no significa que deba dársele la interpretación más ceñida posible a los estatutos penales. *Pueblo v. Tribunal Superior*, supra. No aplica aquí porque el caso ante nos ahora no gira en torno a una disposición

redactada tan confusamente que existan legítimas dudas sobre las actividades que trata de penalizar. Por el contrario, *de su propia faz*, el estatuto en cuestión *claramente* prohíbe no sólo el fraude de ingenieros, contratistas y arquitectos —que presupone obras de importancia— sino también el de "todo aquel ... que luego de recibir dinero ... para ejecutar *el trabajo contratado* ... incumpliere la obligación", que presupone cualquier otra labor, aunque sea de menor envergadura. En efecto, el propio artículo en cuestión impone expresamente una pena más baja para el caso en que la obra no ejecutada sea de un valor menor de doscientos dólares ($200). Las palabras mismas de la disposición en cuestión, pues, según su uso común y corriente, evidentemente penalizan actos como los que se le imputaron al acusado en este caso. El propio estatuto literalmente equipara el vocablo "obra" con el vocablo "trabajo" y claramente dispone que pueden haber "obras" o "trabajos" pequeños, cuyo valor sea menor que la escasa suma de doscientos dólares ($200). Razonablemente se podía entender que la conducta atribuida al acusado estaba prohibida. Para llegar a tal conclusión, no es necesario interpretar la disposición en cuestión más allá de lo que significan sus propios términos literales. Por ello, coincido con el resultado y la posición expresada en la opinión de la mayoría.