*434 Opinión disidente emitida por la Juez
Asociada Señora Ro-dríguez Rodríguez,
a la cual se le une la Jueza Asociada Señora Fiol Matta.
La controversia que nos ocupa trata sobre la instrucción que el Tribunal de Primera Instancia debe impartir en un caso de homicidio negligente en su modalidad agravada por causar la muerte a un ser humano mientras se conduce un vehículo de motor bajo los efectos de bebidas embriagantes. Esto, a su vez, requiere evaluar el signifi-cado del término “bajo los efectos de bebidas embriagantes” a la luz de los propósitos que el legislador persiguió al in-corporar dicho concepto en el tipo del delito de homicidio negligente agravado. Artículo 109 del Código Penal de 2004 (33 L.P.R.A. see. 4737).
Hoy una mayoría de este Tribunal determina que la ins-trucción al Jurado sobre el elemento de embriaguez en el delito de homicidio negligente agravado debe incluir, como alegada inferencia permisible y controvertible, una referen-cia al hecho que la Ley de Vehículos y Tránsito declara ilegal per se el conducir un vehículo de motor con .08% de alcohol en la sangre. Artículo 7.02 de la, Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 5202(a). De esta forma, vía fíat judicial, la Mayoría crea una inferencia per-misible a partir de una norma sustantiva de derecho con-tenida en la Ley de Vehículos y Tránsito de Puerto Rico y luego la traslada al ámbito del Artículo 109 del Código Penal.
Disiento de esta determinación, pues recurrir a la norma sustantiva de derecho contenida en la Ley de Vehículos y Tránsito de Puerto Rico constituye una aplicación por ana-logía de un elemento del delito no contenido en el tipo del homicidio negligente. Como explicaré, la Mayoría realiza una interpretación inaceptable de la intención del legislador *435 al tipificar el delito de homicidio negligente agravado; inter-pretación que además rebasa los límites del tenor literal del Artículo 109 del Código Penal.
H-i
Comienzo por resaltar que nos corresponde interpretar con suma cautela el lenguaje del Artículo 109 del Código Penal de 2004, supra, y los propósitos que guiaron al legis-lador a penalizar de modo agravado el acto de ocasionar la muerte a un ser humano al conducir un vehículo de motor bajo los efectos de bebidas embriagantes. Ello ha de ser así porque somos conscientes de las hondas repercusiones que la solución judicial de este caso tendrá en la administra-ción de la justicia y en los juicios criminales por jurado que se celebren al amparo del Artículo 109 del Código Penal de 2004, supra.
La peticionaria, Sra. Marla Figueroa Pomales (señora Figueroa Pomales), enfrenta tres cargos por homicidio ne-gligente en su modalidad agravada. La modalidad agra-vada de dicho delito consiste en (1) ocasionarle la muerte a un ser humano en claro menosprecio a la seguridad de los demás o (2) ocasionarle la muerte a un ser humano al con-ducir un vehículo de motor bajo los efectos de bebidas embriagantes. 33 L.P.R.A. see. 4737. Celebrado el juicio en su fondo, surgió la presente controversia en torno a la ins-trucción que el Tribunal de Primera Instancia le debe im-partir al Jurado sobre el significado del término “bajo los efectos de bebidas embriagantes”. Ello, ante el hecho que el Código Penal de 2004 no provee una definición de dicho término.
El Ministerio Público propuso una instrucción que, en esencia, hacía alusión al hecho que la acusada “mientras manejaba o intentaba manejar, tenía una concentración de alcohol en la sangre o aliento mayor al .08% ... [y que una persona con un .08% o más] causó la muerte al peijudicado *436 sin intención”. Apéndice de la Petición de certiorari, Anejo III, pág. 29.
No empece la solicitud del Ministerio Público, el Tribunal de Primera Instancia impartió una instrucción en la cual explicó los efectos que una bebida embriagante puede tener en el cuerpo humano. Dicha instrucción indica que la frase “bajo los efectos de bebidas embriagantes” conlleva una disminución en las facultades físicas y mentales del individuo, causada por la presencia de alcohol en el cuerpo y resalta que estar bajo los efectos de una bebida embria-gante “[n]o es un porcentaje de alcohol específico, sino el efecto o incapacidad que genere sobre el individuo, su con-dición física, metabolismo, peso, tolerancia al alcohol si es hombre o mujer”. (Énfasis suprimido.) Véase Apéndice de la Petición de certiorari, Anejo III, págs. 31-32. Establece, además, que “se requiere que la concentración de la sus-tancia alcohólica en el individuo sea de tal magnitud que sus capacidades físicas, motoras y mentales se vean afec-tadas de manera que el funcionamiento del individuo sea uno distorsionado”. íd., pág. 31. Finalmente, dicha instruc-ción explica que, al determinar si una persona estaba bajo los efectos de bebidas embriagantes, el Jurado deberá to-mar en cuenta los factores siguientes: la forma y manera en que el vehículo era manejado, la observación de la persona luego de ser detenida por la policía con especial aten-ción a sus destrezas motoras, lenguaje, olor, vestimenta y el color de sus ojos. Id., pág. 32
Mediante dicha instrucción, el tribunal de instancia proveyó un cuadro sobre los posibles efectos físicos que una bebida embriagante puede tener en la persona que la consume y los signos externos que pueden ser indicios del es-tado de embriaguez. Al adoptarla, el foro primario tomó en cuenta nuestros pronunciamientos anteriores sobre los ele-mentos que pueden indicar que una persona estaba bajo los efectos de bebidas embriagantes. Específicamente, el tribunal recurrió a nuestras expresiones en Domínguez v. *437 GA Life, 157 D.P.R. 690 (2002), sobre el significado de la frase “bajo los efectos de bebidas embriagantes” en el con-texto de una póliza de seguros.(1) Además, el tribunal aclaró que dicha instrucción era cónsona con el testimonio del perito del Estado quien declaró sobre los efectos que el alcohol puede tener en la persona y los factores por consi-derar para determinar si la persona estaba ebria.
Insatisfecho con la instrucción adoptada por el Tribunal de Primera Instancia, el Ministerio Público recurrió al Tribunal de Apelaciones. El Tribunal de Apelaciones revocó la resolución del foro primario y determinó que la instrucción al Jurado en este caso tiene que incluir las disposiciones de la Ley de Vehículos y Tránsito de Puerto Rico, estatuto que, según dicho foro apelativo intermedio concluyó, “define” cuándo es que un conductor está bajo los efectos de bebidas embriagantes.
Por su parte, la peticionaria, señora Figueroa Pomales recurrió ante nosotros mediante recurso de certiorari. En esencia, aduce que la instrucción provista por el foro prima-rio es correcta. En su comparecencia, el Procurador General propuso una nueva instrucción la cual dispone que, al deter-minar si la acusada se encontraba bajo los efectos de em-briaguez, el Jurado podrá tomar en consideración que la acusada arrojó un .12% de alcohol en su sangre y que la ley establece que es ilegal manejar con .08% de alcohol en la sangre. Empero, indica que el Jurado no estará obligado a inferir que la acusada conducía en estado de embriaguez sólo por el resultado de la prueba de alcohol.
Hoy una mayoría de este Tribunal adopta una instruc-ción que hace alusión al por ciento de alcohol en la sangre que la Ley de Vehículos y Tránsito de Puerto Rico declara ilegal per se.
En vista de que el presente caso requiere interpretar el significado de un elemento del delito de homicidio negli- *438 gente agravado, es imperativo aclarar varios asuntos fun-damentales sobre las normas de hermenéutica en el ám-bito del derecho penal.
HH t-H
Es norma reiteradamente establecida que toda ley, in-cluso la más clara, es susceptible de cierto grado de interpretación. Pueblo v. Barreto Rohena, 149 D.P.R. 718, 722 (1999); Pueblo v. Sierra Rodríguez, 137 D.P.R. 903, 906 (1995). Las leyes penales no configuran una excepción a dicho precepto. Sin embargo, al interpretar un estatuto de índole penal, nos corresponde validar los propósitos del le-gislador, en armonía con las restricciones impuestas por el principio de legalidad(2) —Artículo 2 del Código Penal de 2004 (33 L.P.R.A. see. 4630)— y la prohibición de crear delitos, penas o medidas de seguridad por analogía. Artículo 3 del Código Penal de 2004 (33 L.P.R.A. see. 4631).
Siendo conscientes de la delicada tarea que ejercemos al interpretar un estatuto penal, hemos reiterado que nos co-rresponde conferirle a toda ley una interpretación que res-ponda a los propósitos que ésta persigue y de la intención del legislador. Pueblo v. Ruiz, 159 D.P.R. 194, 210 (2003); Pueblo v. Barreto Rohena, supra; Pueblo v. Ríos Dávila, 143 D.P.R. 687, 696 (1997). En esta tarea de interpreta-ción, el principio de legalidad nos impide sustituir la inten-ción legislativa por la propia. Pueblo v. Ruiz, supra, pág. 211.
Al examinar la amplitud y extensión de nuestra facul-tad de interpretación estatutaria, reiteradamente hemos indicado que el principio de legalidad exige interpretar todo estatuto penal de forma restrictiva a favor del impu- *439 tado de delito. Pueblo v. Ruiz, supra; Pueblo v. Bonilla, 148 D.P.R. 486, 502 (1999); Pueblo v. Ríos Dávila, supra, pág. 697; Pueblo v. De León Martínez, 132 D.P.R. 746, 750 (1993). Empero, dichas aseveraciones merecen ulterior consideración, sobre todo a la luz de la aprobación del Código Penal de 2004 y del texto del Artículo 13 de dicho Código.
En su Artículo 13, el Código Penal de 2004 dispone que “[l]as palabras y frases se interpretarán según el contexto y el significado sancionado por el uso común y corriente. ... Si el lenguaje empleado es susceptible de dos o más inter-pretaciones, debe ser interpretado para adelantar los pro-pósitos de este Código y del artículo particular objeto de interpretación”. 33 L.P.R.A. see. 4641. Esta disposición del Artículo 13 constituye una innovación de nuestro nuevo Código Penal que admite la interpretación restrictiva o ex-tensiva, que adelante el propósito legislativo, siempre que no caiga en la analogía.(3) D. Nevares-Muñiz, Derecho Penal Puertorriqueño: Parte General, 5ta ed., San Juan, Inst. Desarrollo del Derecho, 2005, See. 4.5.4, pág. 129. Véase, además, L.E. Chiesa Aponte, Derecho Penal Sustantivo, San Juan, Pubs. JTS, 2007, See. 7, pág. 53.
Conforme al mandato del Artículo 13 del Código Penal, supra, es perfectamente válida una interpretación exten-siva de la ley penal que no sobrepase su sentido literal posible.(4) De esta forma, la interpretación será restrictiva o extensiva según amplíe o restrinja el tenor literal de la *440 ley. F. Muñoz Conde, Introducción al Derecho Penal, 2da ed., Buenos Aires, 1975, pág. 238. En Pueblo v. Sierra Ro-dríguez, supra, clarificamos las diferencias entre la inter-pretación restrictiva y extensiva de la ley penal. En dicha ocasión puntualizamos que “[l]a [interpretación] restric-tiva consiste en limitarse a entender las palabras en su sentido por considerar que éstas son la única expresión de la voluntad del legislador”, mientras que “[l]a extensiva ocurre cuando la letra de la ley no expresa claramente el contenido de la voluntad legislativa ...”. íd., págs. 907-908.
La interpretación extensiva se distingue de la analogía proscrita por nuestro Código Penal, pues la primera “im-porta la aplicación más amplia de la ley hasta donde lo consiente el sentido literal de la misma”, mientras que “se entiende por analogía la aplicación de la ley a un caso similar al legislado pero no comprendido en su texto”. E. Bacigalupo, Manual de derecho penal: parte general, 2da ed., Buenos Aires, Ed. Hammurabi, 1999, pág. 129. Véanse, además: Pueblo v. Sierra Rodríguez, supra, pág. 908; S. Mir Puig, Derecho Penal: Parte General, 5ta ed., Barcelona, 1998, pág. 86. En este respecto, indica el co-mentarista Jiménez de Asúa que, en ocasiones, es necesa-rio aplicar la interpretación extensiva aun cuando no favo-rezca al imputado de delito. L. Jiménez de Asúa, La Ley y el Delito, Buenos Aires, 1984, pág. 118. Sin embargo, dicho comentarista aclara que “[n]o basta la semejanza de razón para producir la extensión de la ley, pero en caso de iden-tidad de razón, incluso las leyes penales pueden ser inter-pretadas extensivamente, siempre que el caso, además, esté comprendido bajo alguna propia significación de las palabras”. Id.
En virtud de lo anterior, la interpretación extensiva no está reñida con el principio de legalidad y la prohibición de la analogía, puesto que en la interpretación extensiva “el caso está previsto por los legisladores, incluso con palabras inadecuadas, mientras que en la aplicación analógica no *441 ha sido contemplada aquella hipótesis por la ley”. Jiménez de Asúa, op. cit., pág. 122. Por lo tanto, podemos emplear una interpretación extensiva de la ley penal para hacer valer la intención del legislador. Dicho ejercicio nos per-mite recurrir al historial legislativo de la ley para entender comprendidos en el término bajo análisis o en el tipo delic-tivo los casos que el tenor literal de la ley comprende, más no nos faculta a suplir la voluntad del legislador no expre-sada en la ley, a pesar de que el legislador la pudo haber expresado en el estatuto. Pueblo v. Ruiz, supra; Jiménez de Asúa, op. cit, págs. 121-122. En fin, existe una distinción material entre la interpretación extensiva y la analogía. Debemos recurrir a la extensiva “cuando la letra de la ley no expresa claramente el contenido de la voluntad de ésta”. Nevares Muñiz, op. cit, pág. 121. Empero, dicha interpre-tación extensiva no nos permite adoptar una voluntad no existente en la ley, actuación que conllevaría una incursión en el terreno proscrito de la analogía. En todo caso, cuando la interpretación extensiva de la ley no disipe las dudas sobre la voluntad del legislador, se debe interpretar dicho estatuto de forma restrictiva en cuanto desfavorezca al acusado.
III
Conforme a lo antes reseñado, la presente controversia trata sobre un elemento normativo del delito de homicidio negligente agravado que requiere valoración judicial. Véase Bacigalupo, op. cit La mayoría de este Tribunal co-rrectamente indica que, en vista de que el Artículo 109 del Código Penal no define el término “bajo los efectos de be-bidas embriagantes”, nos corresponde aplicar los cánones de interpretación estatutaria en el ámbito penal para de-terminar cuál fue la intención del legislador al tipificar como delito el causarle la muerte a un ser humano al con- *442 ducir un vehículo de motor bajo los efectos de bebidas embriagantes.
En su exposición de las pautas de hermenéutica legal aplicables al presente caso, la Mayoría aduce que debe in-terpretar el estatuto penal en controversia de forma res-trictiva en tanto desfavorezca a la acusada. Ello, sin me-noscabar los propósitos que inspiraron al legislador a aprobar el Artículo 109 del Código Penal. No obstante, a pesar de que la Mayoría profesa una estricta adhesión al principio de interpretación restrictiva, luego realiza una interpretación de dicha disposición estatutaria que rebasa el tenor literal de ésta puesto que recurre a aplicar, como alegada inferencia permisible, las disposiciones de la Ley de Vehículos y Tránsito de Puerto Rico.
La Mayoría emprende un arduo peregrinaje de interpre-tación estatutaria en su empeño por incluir una referencia a la Ley de Vehículos y Tránsito de Puerto Rico en la ins-trucción al Jurado sobre un elemento del delito de homici-dio negligente agravado: conducir bajo los efectos de bebi-das embriagantes. En esta tarea, se remite al historial legislativo de los Artículos 86 y 87 del Código Penal de 1974 sobre homicidio involuntario, puesto que éstos prece-den al Artículo 109 del Código Penal de 2004. Específica-mente, alude a la enmienda realizada al Artículo 87 del Código Penal en 2003 mediante la cual el legislador aclaró que imprudencia crasa o temeraria al conducir bajo los efectos del alcohol en el contexto del delito de homicidio involuntario incluía conducir bajo los efectos de bebidas embriagantes. Según la Mayoría, al introducir dicha en-mienda, el legislador tuvo en cuenta la alta incidencia de accidentes de tránsito en los que los conductores arrojaron un resultado positivo a alcohol en su sangre.
De lo anterior, la mayoría de este Tribunal deduce que, al tipificar como delito el ocasionarle la muerte a un ser humano al conducir en estado de embriaguez, el legislador hizo referencia a las disposiciones de la Ley de Vehículos y *443 Tránsito de Puerto Rico, estatuto cuyo norte es combatir el problema de los conductores ebrios en las vías públicas. En vista de que dicho estatuto le confiere gran importancia al por ciento de alcohol en la sangre al determinar si una persona conducía bajo los efectos de bebidas embriagantes, la Mayoría entiende que, en un juicio por homicidio negligente agravado, el juez debe instruir al Jurado sobre el porciento de alcohol que la Ley de Vehículos y Tránsito de Puerto Rico declara ilegal en el contexto de manejar un vehículo de motor.
Como bien indica la Mayoría, a poco que se examine el historial legislativo del Artículo 109 del Código Penal y el de y su antecesor —el Artículo 87 del Código Penal de 1974— es evidente que el legislador tomó en cuenta los propósitos de la Ley de Vehículos y Tránsito de Puerto Rico, estatuto que castiga el conducir un vehículo en es-tado de embriaguez. Así, el legislador pretendió castigar “rigurosamente a aquellas personas que, a sabiendas del efecto que el alcohol y las drogas producen en sus sentidos, conducen vehículos de motor en tales condiciones, po-niendo en peligro sus vidas y las de otros”. Informe sobre el P. de la C. 2283, Comisión de lo Jurídico, Cámara de Re-presentantes, pág. 6. Empero, se equivoca la Mayoría al concluir que dicha identidad de propósitos justifica aplicar la norma sustantiva de derecho de la Ley de Vehículos y Tránsito de Puerto Rico al delito de homicidio negligente agravado, aun cuando se camufle bajo el manto de una inferencia permisible.
En lo que nos concierne, la Ley de Vehículos y Tránsito de Puerto Rico declara ilegal per se el que cualquier persona mayor de 18 años conduzca un vehículo de motor con un contenido de alcohol en su sangre de ocho centésimas del uno por ciento. Art. 7.02 de la Ley de Vehículos y Tránsito de Puerto Rico, supra. Dicha disposición establece una norma de derecho sustantivo aplicable al estatuto. Esta encierra un mandato legislativo que se aplica conforme a *444 los términos de dicho estatuto y no a base de inferencias. Es decir, en cualquier procedimiento criminal por infracción a dicho precepto estatutario, la propia ley exige concluir que la persona estaba bajo los efectos de bebidas embriagantes si la prueba de alcohol en la sangre refleja que la persona tenía una concentración de alcohol igual o mayor al .08%.
Por mandato de la propia ley, no sólo es ilegal manejar un vehículo de motor con .08% de alcohol en la sangre, sino que toda persona que viole el referido Artículo 7.02 y a conse-cuencia de ello le ocasione daño corporal o grave daño corporal a otra persona, incurrirá en delito menos grave en el primer caso, 9 L.P.R.A. see. 5205, y en delito grave en el segundo, 9 L.P.R.A. see. 5206. Como se observa, en ambos casos, el legislador tipificó como delito el ocasionar daño corporal a otra persona al conducir un vehículo de motor con una cantidad de alcohol en la sangre igual o mayor al. 08%.
Sin embargo, al aprobar la Ley de Vehículos y Tránsito de Puerto Rico el legislador no tipificó como delito el ocasionar la muerte a un ser humano al conducir un vehículo en es-tado de embriaguez. Como bien indica la Mayoría, el legis-lador tipificó dicha conducta en el 2003 al enmendar el Ar-tículo 87 del Código Penal de 1974 y luego en el 2004 al crear el delito de homicidio negligente agravado. No obs-tante, al establecer el delito de homicidio negligente agra-vado, el legislador no hizo alusión alguna al porciento de alcohol en la sangre que la Ley de Vehículos y Tránsito de Puerto Rico dispone que es ilegal per se. Es decir, a pesar de que al adoptar la Ley de Vehículos y Tránsito de Puerto Rico el legislador realizó un juicio valorativo sobre los porcientos de alcohol en la sangre que pueden reflejar si una persona está o no bajo los efectos de bebidas embriagantes, en el 2003, al enmendar el Artículo 87 del Código Penal de Puerto Rico de 1974, y al aprobar el Artículo 109 del Código Penal de 2004, el legislador no adoptó por referencia directa o in-directa, el mandato legislativo de la Ley de Vehículos y Tránsito de Puerto Rico.
*445 La Mayoría reconoce que el legislador no incorporó las disposiciones de la Ley de Vehículos y Tránsito de Puerto Rico como un elemento del delito de homicidio negligente agravado. Sin embargo, bajo el palio de la interpretación in pari materia de estatutos penales, y so pretexto de confe-rirle armonía y coherencia a los actos legislativos, incorpora las disposiciones del referido estatuto al ámbito del Artículo 109 del Código Penal. Entiende que, al penalizar la acción de causarle la muerte a un ser humano al conducir un vehí-culo de motor bajo los efectos del alcohol, el legislador tuvo en mente la Ley de Vehículos y Tránsito de Puerto Rico y los porcientos de alcohol en la sangre que dicho estatuto consi-dera ilegales.
No puedo estar conforme con dicha interpretación de la Mayoría. Como indiqué, la Ley de Vehículos y Tránsito de Puerto Rico no establece una presunción de embriaguez, más bien prohíbe determinada conducta. Muy bien el legis-lador pudo haber incluido como elemento del homicidio ne-gligente agravado el ocasionar la muerte de un ser humano al manejar un vehículo de motor con .08% por ciento de alcohol en la sangre; o pudo haber indicado que el elemento de embriaguez quedaría definido por la Ley de Vehículos y Tránsito de Puerto Rico. Sin embargo, el silencio legislativo no nos permite recurrir a dicho estatuto bajo el razona-miento de que éste pretende adelantar los intereses que el legislador tuvo en cuenta al tipificar el delito de homicidio negligente. No están en controversia las motivaciones del legislador al establecer una norma de ilegalidad automática al manejar un vehículo con .08% de alcohol en la sangre. Tampoco cuestiono la validez de los intereses de seguridad pública que la Ley de Vehículos y Tránsito de Puerto Rico promueve. Empero, la identidad de propósitos entre dicho estatuto y el Artículo 109 del Código Penal no justifica reba-sar los límites de la interpretación estatutaria para extender las disposiciones de la Ley de Vehículos y Tránsito de Puerto Rico al delito de homicidio negligente.
*446 El principio de hermenéutica que nos permite armonizar las disposiciones de leyes distintas que tratan sobre la misma materia, Pueblo v. Valentín, 135 D.P.R. 245, 252 (1994), no nos faculta a interpretar un elemento del delito de homicidio negligente conforme a una norma sustantiva de derecho contenida en otro estatuto. Es imperativo adver-tir que, bajo el “manto protector” de una alegada “inferencia permisible” la Mayoría utiliza una norma sustantiva conte-nida en la Ley de Vehículos y Tránsito de Puerto Rico y la incorpora al delito de homicidio negligente agravado. Es de-cir, bajo el palio de una inferencia permisible, la Mayoría incorpora un nuevo elemento al delito de homicidio negli-gente que el legislador no incluyó. Ello configura una apli-cación analógica de la ley penal que no puedo sancionar. (5)
En fin, la Mayoría “traslad[a] la norma de un marco ins-titucional a otro”. F. Muñoz Conde, op. cit., pág. 239 (citando a Diez Picazo, Experiencias jurídicas y teoría del derecho, Madrid, 1974, pág. 282). Indica que no fue por casualidad que el legislador utilizó el término “bajo los efectos de bebi-das embriagantes” en ambos estatutos. Sobre ello basta aco-tar que la Asamblea Legislativa tiene la facultad constitu-cional exclusiva de tipificar delitos. Pueblo v. Martínez Torres, 116 D.P.R. 793, 796 (1986). Por lo tanto, con especial recelo en materia de derecho penal, es inaceptable realizar un juicio de probabilidades al dirimir el sentido que el legis-lador le quiso conferir a cierto término. Por el contrario, de-bemos ejercer nuestra función de interpretación a la luz del lenguaje utilizado en el estatuto, el uso común y corriente de los términos y del historial legislativo de la ley, velando por hacer valer la intención del legislador y los propósitos del Código Penal.
*447 En este caso, como indiqué, nada en el lenguaje del Artí-culo 109 del Código Penal o en su historial legislativo nos permite determinar que el legislador quiso definir el con-cepto “bajo los efectos de bebidas embriagantes” a partir de las disposiciones sustantivas de la Ley de Vehículos y Trán-sito de Puerto Rico. Por lo tanto, habida cuenta de que las instrucciones al Jurado pretenden incluir una explicación correcta, clara y precisa sobre la evidencia presentada y el derecho aplicable —Pueblo v. Sánchez Molina, 134 D.P.R. 577, 590-591 (1993)— es inaceptable incluir alusión alguna al porciento de alcohol en la sangre que la Ley de Vehículos y Tránsito de Puerto Rico declara ilegal per se en el contexto de manejar un vehículo de motor. Ello no se subsana con indicar que se adoptará dicha normativa en el contexto de una inferencia permisible que el juzgador no estará obligado a aceptar como concluyente.
IV
Conforme a lo anterior, entiendo que la instrucción pro-puesta por el Tribunal de Primera Instancia guarda sinto-nía con nuestros pronunciamientos anteriores sobre los elementos probatorios que, a la luz de la prueba presen-tada y de la totalidad de las circunstancias, pueden llevar al juzgador de los hechos a determinar si la persona mane-jaba bajo los efectos de bebidas embriagantes.(6) Véanse: Pueblo v. Quiles Morgado, 87 D.P.R. 491, 494 (1963); Pueblo v. Soto Cintrón, 87 D.P.R. 688 (1963); Pueblo v. Hernández Justiniano, 86 D.P.R. 793 (1962).
*448 Aun cuando la mayoría reconoce que en este caso el Ju-rado puede considerar las circunstancias concomitantes que abonan a la conclusión de que la peticionaria manejó un vehículo bajo los efectos de bebidas embriagantes, tales como el dominio de la persona sobre su cuerpo, sus ojos, su aliento, el habla y la forma en que conducía su vehículo, también determina que el Jurado podrá inferir que la peti-cionaria estaba bajo los efectos de bebidas embriagantes a partir del porciento de alcohol en la sangre la Ley de Vehí-culos y Tránsito de Puerto Rico declara ilegal. Por las razo-nes antes detalladas, entiendo que el tenor literal del Artí-culo 109 del Código Penal no nos permite trasladar la norma de la Ley de Vehículos y Tránsito de Puerto Rico al contexto del delito de homicidio negligente agravado.
Soy del criterio que los factores que en el pasado hemos indicado abonan a la conclusión de que un individuo ma-nejó un vehículo de motor bajo los efectos de bebidas em-briagante, junto a la prueba desfilada en el juicio, inclu-yendo los resultados de una prueba de sangre o de aliento, deben servir de norte en una instrucción al Jurado que pretenda definir qué significa guiar bajo los efectos de be-bidas embriagantes. Ello, sin necesidad de instruir al ju-rado sobre las disposiciones de la Ley de Vehículos y Trán-sito de Puerto Rico.

 Em Domínguez v. GA Life, 157 D.P.R. 690, 702 (2002), indicamos que “la frase o terminología ‘bajo los efectos de bebidas alcohólicas o embriagantes’ denota una disminución o pérdida de las facultades físicas y mentales del individuo, causada por la presencia de alcohol en su cuerpo”.

 Dicho artículo dispone que “[n]o se instará acción penal contra persona al-guna por un hecho que no esté expresamente definido como delito en este Código o mediante ley especial, ni se impondrá pena o medida de seguridad que la ley no establezca con anterioridad a los hechos”. 33 L.P.R.A. see. 4630.

 Esta disposición se adoptó de la Sección 1.02(3) del Código Penal Modelo, la cual dispone en su parte pertinente: “when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this Section and the special purposes of the particular provision involved.” Sec. 1.02(3), Cód. Pen. Mod. (1962).

 Algunos comentaristas equiparan la interpretación analógica con la exten-siva por sus similitudes, mas no se debe entender que interpretación analógica y analogía significan lo mismo, puesto que “mientras que la analogía supone una in-fracción del principio de legalidad, traspasando al ‘sentido literal posible’ del texto legal, la interpretación analógica respeta el principio de legalidad, permaneciendo dentro del ‘sentido literal posible’ ”. F. Muñoz Conde, Introducción al Derecho Penal, 2da ed., Buenos Aires, 1975, pág. 235.

 Ello, además, sin duda alguna llevará a un Jurado razonable a entender que si la acusada tenía un porciento del alcohol en la sangre mayor al permitido por ley, ella estaba embriagada. De esta forma, la alegada inferencia permisible se convertirá en-tonces en una presunción mandatoria que vulnera los derechos constitucionales de la acusada a un juicio justo e imparcial, a la presunción de inocencia y trastoca el deber del Estado de probar todos los elementos del delito más allá de duda razonable.

 En Pueblo v. Quiles Morgado, 87 D.P.R. 491, 494 (1963), indicamos que, “in-dependientemente del resultado del análisis, el testimonio del policía que gestionó la toma de la muestra estableció en forma incontrovertida [sic] que el apelante daba muestras de encontrarse en estado de embriaguez —apenas podría sostenerse en pie, no tenía control de sus reflejos musculares, su aliento despedía un fuerte olor a licor [y] hablaba en forma entrecortada”. (Citas omitidas.) Además, en Pueblo v. Hernández Justiniano, 86 D.P.R. 793 (1962), a pesar de que no se activó la presunción de embriaguez a partir del porciento de alcohol en la sangre del acusado, determinamos a la luz de la prueba presentada que el acusado no se encontraba en tal estado de embriaguez que no le hubiera permitido conducir un vehículo de motor con pericia o lucidez.